Ethel TOLANY, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of U.S. Department of Health and Human Services, Defendant-Appellee.

No. 305, Docket 84–6156.

United States Court of Appeals, Second Circuit.

Argued Oct. 17, 1984.

Decided March 4, 1985.

Natalie J. Kaplan, New York City, for plaintiff-appellant.

Paula A. Sweéney, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Kathleen A. Roberts, Thomas D. Warren, Asst. U.S. Attys., New York City, on brief), for defendant-appellee.

Before NEWMAN, CARDAMONE and DAVIS,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Ethel Tolany appeals from the judgment of the District Court for the Southern District of New York (Abraham D. Sofaer, Judge) dismissing her complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Tolany sought review of a final determination of the Secretary of the Department of Health and Human Services ("Secretary") denying her application for widow's disability insurance benefits under the Social Security Act ("Act"). We conclude that Tolany's application must be remanded to the Secretary for consideration of new evidence.

## BACKGROUND

Appellant is a 59-year-old widow with a long history of urinary incontinence and hypothyroidism. She filed an application for widow's disability insurance benefits on October 21, 1980, which was denied both on initial review and on reconsideration. Appellant was granted a *de novo* hearing before an Administrative Law Judge ("ALJ") on October 21, 1981. At the hearing the appellant described the unfortunate consequences of her condition. She testified that she urinates between five and ten times per hour, sometimes experiencing painful spasms, and that, when a bathroom is not readily available, involuntary voiding occurs with the same frequency. Despite her use of diapers whenever she goes out in public, the urine often is not contained and soils her clothing.

The ALJ denied appellant's disability claim. He found that appellant had proven that she suffered from urinary stress incontinence and hypothyroidism, but that these conditions were not severe enough to be considered the equivalent of the impairments set forth in the Secretary's "Listing of Impairments," 20 C.F.R. § 404 subpart P, app. 1 (1984).[1] His decision became the final decision of the Secretary when the Appeals Council declined a request for review on February 10, 1983.

Appellant commenced this action in the District Court to review the decision of the Secretary pursuant to 42 U.S.C. § 405(g) (1982). The Secretary moved for judgment on the pleadings. Appellant's affidavit in opposition to that motion included a September 1, 1983, medical report of Dr. Ivan Bodis-Wollner, indicating that appellant suffers from a "demyelinating disease."[2] The District Court granted the motion, thereby affirming the administrative denial of disability benefits. The Court also ruled that the Bodis-Wollner report did not warrant a remand to the Secretary. This appeal followed.

## DISCUSSION

■ To qualify for *widow's* disability insurance benefits, appellant must meet a

---

* The Honorable Oscar H. Davis of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The two parts of the Listing of Impairments most pertinent to Tolany's claim, as it was presented to the ALJ, are section 6.00 *et seq.* relating to the genito-urinary system and section 9.00 *et seq.* relating to the endocrine system.

2. The most common demyelinating disease is multiple sclerosis. At oral argument counsel for appellant asserted that Dr. Bodis-Wollner would have used this term in his diagnosis of appellant but for the negative psychological effect it might have had on her.

more stringent standard than that applicable to *wage-earner* claimants: "a widow's disability must be sufficiently severe to preclude an individual from engaging in 'any' gainful activity, whereas a wage earner's disability need be sufficient to preclude an individual from engaging in any 'substantial' gainful activity." *Gallagher v. Schweiker,* 697 F.2d 82, 84 n. 2 (2d Cir.1983). *Compare* 42 U.S.C. § 423(d)(2)(A) *with id.* § 423(d)(2)(B). Moreover, in determining whether a widow is disabled, the Secretary does not consider the "age, education and work experience" of the claimant. 20 C.F.R. § 404.1577 (1984). These two differences, a higher substantive standard and a slightly modified methodology, distinguish the disability determination for widows[3] from the disability determination for wage earners. The different substantive standard applicable to widows does not, however, imply additional differences in methodology. *See Smith v. Schweiker,* 671 F.2d 789, 793 (3d Cir.1982) ("[W]hile the test for determining entitlement to disability benefits may be different for widows than for wage earners, ... the process of evaluating the evidence of a claimant's impairment is not.").

The basic procedure for determining disability under the Act is set forth in 20 C.F.R. § 404.1520. That section provides that the Secretary shall follow what has come to be called the "sequential evaluation process." The use of this procedure is not discretionary; it is a regulatory requirement. *City of New York v. Heckler,* 742 F.2d 729, 732 (2d Cir.1984). We recently summarized the five steps that section 404.1520 requires in the determination of disability:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied. 20 C.F.R. §§ 404.1520(a), (b), 416.920(a), (b) (1983). If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, bene-

fits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in subpart P, app. 1, of the social security regulations, 20 C.F.R. §§ 404.-1520(d), 416.920(d). These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," *i.e.,* his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e). If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." *Decker v. Harris,* 647 F.2d 291, 298 (2d Cir.1981); 20 C.F.R. §§ 404.-1520(f), 416.920(f). If not, benefits are awarded.

*City of New York v. Heckler, supra,* 742 F.2d at 732.

The Act explicitly authorizes the Secretary to promulgate regulations to guide determination of whether a widow's impairments are sufficiently "severe" to preclude any gainful activity. 42 U.S.C. § 423(d)(2)(B). In addition to the basic procedure for determining disability set forth in 20 C.F.R. § 404.1520, the Secretary has promulgated regulations specifically applicable to disability claims of widows. Section 404.1577 emphasizes the stricter statu-

---

**3.** We use the term "widow" throughout only for convenience. Nothing in this opinion is intended to distinguish widows from other persons treated similarly by the Act and regulations, *e.g.,* widowers and surviving divorced wives. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1577.

tory standard—preclusion of *any* gainful activity—and also states that age, education, and work experience will not be considered. Section 404.1578 provides that disability will be found if a widow's impairments have specific clinical findings that are "the same as those for any impairment" on the Listing of Impairments in Appendix 1 or are "medically equivalent" to those for any listed impairment.

It is not clear how the basic procedure outlined in section 404.1520 for all disability determinations fits with the provisions of sections 404.1577 and 404.1578 pertaining to widows. At least the first three of the sequential steps of section 404.1520 appear to apply fully to widows. Thus, a widow will be denied disability insurance benefits if (1) she is engaged in "substantial gainful activity," *compare* 20 C.F.R. § 404.1520(a), (b), *with id.* § 404.1578(b); (2) her medical condition or impairment is not "severe," *compare id.* § 404.1520(c) *with id.* § 404.1578(a)(1) *and id.* 404.-1525(a); or (3) her impairments are not the same as or the equivalent of any impairment on the Listing of Impairments, *compare id.* § 404.1520(d) *with id.* § 404.-1578(a)(1). Furthermore, because section 404.1577 explicitly precludes consideration of the claimant's age, education, and work experience, there is no doubt that the fifth step of the basic sequential procedure is not applicable to widows to the extent that it requires consideration of these factors.

What is unclear is the extent to which the Secretary's regulations require some consideration of a widow's residual functional capacity. Such consideration is included in step four of the basic sequential procedure, 20 C.F.R. § 404.1520(e). For claimants with a severe impairment not listed or equivalent to a listed impairment, residual functional capacity is determined, first, to see if the claimant can perform prior work, *id.*, and, if not, then to see if the claimant can perform other work, *id.* § 404.1520(f). The special procedure for widows does not mention residual functional capacity, but this does not necessarily mean it may be ignored. Indeed, the explicit statement in section 404.1577 that

age, education, and work experience—three of the factors listed in step five of the basic procedure—will not be considered suggests that the other factor mentioned in step five—residual functional capacity—will be considered. Moreover, the procedure for widows explains that disability *will be found* if the claimant *has* a listed impairment or the equivalent; it does not state that such an impairment is the only basis for meeting the statutory standard. If a claimant has an impairment that is not listed and is not the medical equivalent of a listed impairment, but the claimant nevertheless is unable to engage in any gainful activity, it is difficult to see how that person may be denied benefits. It would seem anomalous if an impairment that is only presumed to be disabling because it is listed results in allowance of benefits, yet an impairment that in fact leaves the claimant without the residual functional capacity to engage in any gainful activity is insufficient to warrant benefits.

The basic procedure and the widow's procedure might be reconciled by considering residual functional capacity in the determination of whether the claimant's impairment, if unlisted, is nonetheless equivalent to a listed impairment. The regulations make clear that a determination of medical equivalence must be based on medical evidence, 20 C.F.R. § 404.1526(b), and that "[r]esidual functional capacity is a medical assessment," *id.* § 404.1545(a). Moreover, every claimant, including an applicant for widow's benefits, is required to submit "medical evidence" that is "complete and detailed enough" to allow a determination of the nature of a claimant's impairments, their probable duration, and the claimant's "residual functional capacity." *Id.* § 404.-1513(d). It would be entirely understandable that benefits would be denied after a determination that a widow did not have an impairment equivalent to a listed impairment if that conclusion were based on a determination that the claimant's residual functional capacity left the claimant with adequate capacity to perform "any" gainful activity. On the other hand, if the

claimant's residual functional capacity leaves that person unable to perform any such activity, then it is difficult to see how the impairment could fail to be the equivalent of some impairment on a list of what purports to be impairments "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.-1525(a).

In this case, there was no assessment of the claimant's residual functional capacity, and the claimant, focusing on other issues in the litigation, has not posed the issue in terms that would prompt the Secretary to enlighten us as to what role residual functional capacity plays in determining a widow's claim or how the regulations are fairly to be understood in the event that residual functional capacity is to be ignored. In these circumstances and since the matter must be returned to the Secretary for further consideration in any event because of the report of Dr. Bodis-Wollner, we deem it inappropriate at this stage to do more than identify the issue for the Secretary's further consideration.

■ Dr. Bodis-Wollner's report of September 1, 1983, written after the Appeals Council denied review, sheds considerable new light on the seriousness of Tolany's condition. The report supplies the first diagnosis that attributes her incontinence to a demyelinating disease, by which her counsel states the doctor has said he means multiple sclerosis. This is not simply the application of "specific medical terminology" to symptoms that had been observed for years, as was the case in *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983). In that case the alleged new evidence was only the designation "organic brain syndrome" applied to mental deficiencies that had been fully disclosed and evaluated in the past. Here a treating physician has for the first time diagnosed a neurological cause of Tolany's serious condition, which had previously been assessed and treated only as a urological impairment. Her condition must now be assessed in relation to the neurological impairments listed in Appendix 1, §§ 11.00–11.19.

Furthermore, Dr. Bodis-Wollner's report provides significant new information as to whether Tolany's incontinence can be controlled by medication. The Secretary has argued that Tolany's incontinence "can be treated with drugs." Brief for Appellee at 16. However, as the Secretary also acknowledges, *id.* at 9, the only support for this conclusion in the record before the ALJ was the report of Dr. Elliot Leiter. His report stated that "it is not possible for me to say, at the present time, whether this incontinence will be refractory to treatment." He added that the findings suggest that treatment with drugs *"might help"* (emphasis in original). Now Dr. Bodis-Wollner reports that although Tolany has been taking the medication prescribed by Dr. Leiter, the medication "appears to have had very little effect."

Dr. Bodis-Wollner's report satisfies the restrictive standards for a remand established by the amended version of section 205(g) of the Act, 42 U.S.C. § 405(g). The new evidence is material, and good cause for not presenting it earlier arises from the fact that the doctor's diagnosis was based on a recent neurological evaluation and laboratory data, and his assessment of her response to medication necessarily had to await some period of observation. *See Burton v. Heckler*, 724 F.2d 1415, 1418 (9th Cir.1984); *Dorsey v. Heckler*, 702 F.2d 597, 605–06 (5th Cir.1983); *Goerg v. Schweiker*, 643 F.2d 582, 584 (9th Cir.1981).

Finally, we note that a remand will enable the Secretary to clarify the unarticulated assessment that she contends the ALJ implicitly made of the claimant's pain and the relationship of that pain, in conjunction with her other symptoms, to her overall ability to engage in any gainful activity. *See DeLeon v. Secretary*, 734 F.2d 930, 937 (2d Cir.1984); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

The judgment of the District Court is reversed and the cause remanded with directions to remand to the Secretary for further proceedings consistent with this opinion.