**Eileen WILLIAMS, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 86 Civ. 2129(RJW).**

United States District Court, S.D. New York.

April 29, 1987.

Scheine, Fusco & Brandenstein, P.C., Hempstead, N.Y., for plaintiff; Milan Rada, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Donna H. Lieberman, Sp. Asst. U.S. Atty., of counsel.

**ROBERT J. WARD, District Judge.**

Plaintiff Eileen Williams brings this action pursuant to section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g), seeking judicial review of a final decision by the defendant Secretary of Health and Human Services (the "Secretary" of "HHS") denying her application for widow's insurance benefits. The Secretary has moved under Rule 12(c), Fed.R. Civ.P., for judgment on the pleadings. Plaintiff has cross-moved for judgment on the pleadings. For the reasons to follow, the Court denies both motions and remands the action to the Secretary for further proceedings in accordance with this decision.

## BACKGROUND

Plaintiff was born on June 12, 1929. Her husband was fully insured when he died February 3, 1976. At present plaintiff lives in a ground floor apartment in the Bronx with her daughter. In February, 1983 while on the way to her job as a therapeutic aide at the Bronx Psychiatric Center, plaintiff slipped and fell on the ice, injuring her right knee. Clinic notes from Misercordia Hospital indicate that plaintiff was seen there on an outpatient basis from March, 1983 to August, 1983. She complained of severe pain in the knee. Subsequently she has been under the care of several physicians and now walks with a cane and knee brace. She has not engaged in any gainful activity since her injury.

Williams filed applications for widow's insurance benefits on June 23, 1983, September 12, 1984, and January 18, 1985, alleging the onset of disability as February 12, 1983, the date she slipped and fell. The Secretary denied her applications initially and upon reconsideration. After the last denial, plaintiff timely requested an administrative hearing, which was held before Administrative Law Judge Irwin Bernstein (the "ALJ") on July 30, 1985. Plaintiff's counsel, her daughter, and a medical advisor called by the Secretary appeared at the hearing. In a written decision dated September 23, 1985, the ALJ found that plaintiff was not disabled within the meaning of the Act. When the appeals council denied plaintiff's request to review the ALJ's decision, that decision became the Secretary's final determination. Plaintiff then filed this action for judicial review of the Secretary's final determination. The Secretary has moved for judgment on the pleadings. Plaintiff has cross-moved for judgment on the pleadings.

## DISCUSSION

A. The Standard of Review.

The legal standards that govern review of the Secretary's determination are well settled. Assuming the Secretary has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence. If they are so supported, they are conclusive. 42 U.S.C. § 405(g); *see Rivera v. Harris*, 623 F.2d 212 (2d Cir.1980). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Where evidence has not been properly evaluated because of the application of an erroneous legal standard, however, the determination of the Secretary may not be upheld. *See Marcus v. Califano*, 615 F.2d 23, 28 (2d Cir.1979).

Section 202(e)(1)(B)(ii) of the Act provides that the widow of an insured individual is entitled to insurance benefits if she is between 50 and 60 years of age and suffering a disability as that term is defined in section 223(d). That section generally defines "disability" as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," but specifically requires that the widow of a wage earner shall not be determined to be under a disability "unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in *any* gainful activity." *Compare* 42 U.S.C. § 423(d)(2)(A) *with id.* § 423(d)(2)(B). A claimant seeking widow's disability benefits must therefore meet a more stringent standard than that applicable to a wage earner claimant. *Tolany v. Heckler*, 756 F.2d 268 (2d Cir.1985). Furthermore, in determining whether a widow is disabled, the Secretary does not consider the "age, education and work experience" of the claimant as he must for wage earners. 20 C.F.R. § 404.1577; *Tolany v. Heckler, supra*, 756 F.2d at 270.

█ The Act explicitly authorizes the Secretary to promulgate regulations to guide disability determinations. The basic procedure, which is not discretionary, involves a five-step sequential evaluation process.[1] The specific regulations to determine whether a widow's impairments are sufficiently "severe" to preclude any gainful activity emphasize the more rigid statutory standard that a widow must be precluded from any gainful activity and highlights that age, education, and work experience will not be considered in determining disability. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1577. The Secretary will find a widow disabled, and unable to engage in any gainful activity, if her impairment is found in the Listing of Impairments, or if her impairments, considered in combination, are the medical equivalent of a listed impairment. 20 C.F.R. § 404.1578(a).

█ The Second Circuit recently noted the ambiguity as to how the basic procedure outlined in section 404.1520 fits with the special provisions for widows. The Court suggested a method of reconciling

---

1. The Second Circuit recently described the process mandated by the Secretary's regulations. The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied. 20 C.R.R. §§ 404.1520(a), (b), 416.920(a), (b) (1983). If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in subpart P, app. 1, of the social security regulations, 20 C.F.R. §§ 404.1520(d), 416.920(d). These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits. if the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. 20 C.F.R. §§ 404.1520(d), 416.920(e). If not, the fith and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." *Decker v. Harris*, 647 F.2d 291, 298 (2d Cir. 1981); 20 C.F.R. 404.1520(f), 416.920(f). If not, benefits are awarded. *Dixon v. Heckler*, 785 F.2d 1102 (2d Cir.1986) (quoting *City of New York v. Heckler*, 742 F.2d 729, 732 (2d Cir.1984), *aff'd, sub nom. Bowen v. City of New York*, —— U.S. ——, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)).

the apparent discrepancy in the methodologies.

What is unclear is the extent to which the Secretary's regulations require some consideration of a widow's residual functional capacity. Such consideration is included in step four of the basic sequential procedure. For claimants with a severe impairment not listed or equivalent to a listed impairment, residual functional capacity is determined, first, to see if the claimant can perform prior work and, if not, then to see if the claimant can perform other work. The special procedure for widows does not mention residual functional capacity, but this does not necessarily mean it may be ignored. Indeed, the explicit statement in section 404.1577 that age, education, and work experience—three of the factors listed in step five of the basic procedure—will not be considered suggests that the other factor mentioned in step five—residual functional capacity—will be considered. Moreover, the procedure for widows explains that disability *will be found* if the claimant *has* a listed impairment or the equivalent; it does not state that such an impairment is the only basis for meeting the statutory standard. If a claimant has an impairment that is not listed and is not the medical equivalent of a listed impairment, but the claimant nevertheless is unable to engage in any gainful activity, it is difficult to see how that person may be denied benefits.

*Tolany v. Heckler, supra,* 756 F.2d at 271.[2] The circuit panel in *Tolany* explicitly invited the Secretary to elaborate the role that an assessment of residual functional capacity should play in the determining whether a widow's impairment is equivalent to one of the Listing of Impairments. *Id.* at 272. In the absence of any elaboration from the Secretary on this issue, the decision in *Tolany* obligates the ALJ to assess a claimant's residual functional capacity to determine whether he or she can engage in any gainful activity, not merely to determine whether the impairments complained of do not meet the Listing of Impairments.

## B. The Secretary's Determination.

■ In evaluating Williams' disability application, the ALJ found that although the medical evidence in the record established the existence of a right knee condition on or before established the existence of a right knee condition on or before February 3, 1983[3], the evidence did not establish that the condition met the Listing of Impairments in Appendix 1. Specifically, the ALJ found:

Dr. S. Klein, an orthopedist testified as a medical advisor after fully reviewed the

---

**2.** At least one other court has endorsed the approach taken by the Second Circuit. *Williams v. Bowen,* 636 F.Supp. 699, 702–03 (N.D.Ill.1986) (ordering the Secretary to consider the functional impact of plaintiff's hearing loss not just whether it met or equalled a listed impairment). Other courts that have confronted the situation of a widow who has an impairment or impairments that apparently preclude any gainful activity but that nonetheless do not meet the Secretary's listing of impairments have suggested that impairments that in fact preclude gainful activity must be equivalent to a listed impairment. *See, e.g., Georgevitch v. Bowen,* 650 F.Supp. 635 (N.D.Ill.1986) (remanding to Secretary to redetermine equivalence when impairments clearly preclude widow from even sedentary work); *Hamby v. Heckler,* 607 F.Supp. 331 (W.D.N.C.1985) (reversing as not supported by substantial evidence a determination that plaintiff's impairments did not meet or equal a listed impairment of the spine when overwhelming evidence demonstrated that plaintiff's impairments precluded any gainful activity). The approach taken by the Second Circuit has the advantages of recognizing that the listed impairments cover only certain categories of presumptively disabling impairments and of acknowledging that impairments that in fact preclude gainful activity need not be equivalent to one of the listed categories.

**3.** Specifically the ALJ found that "[t]he medical findings shown in the medical evidence of record establish the existence of a right knee condition on or before February 3, 1983." (Tr. 22). Plaintiff fell and injured herself February 12, 1983. While her injury might seem to fall outside the seven year eligibility period, as the Secretary has interpreted section 402(e)(4), a widow is entitled to benefits if she becomes disabled within eighty-four months from the end of the month the wage earner died. In correspondence with Williams, the Secretary confirmed that she had to establish that she was disabled on or before February 28, 1983. (Tr. 5, 11). The ALJ clearly considered the injury resulting from the fall in reaching his decision on disability.

medical records. Dr. Klein indicated the record reflects the claimant has osteoarthritis of the right knee and questionable laxity of the anterior cruciate ligament, confirmed by arthrogram. There is also an indication of degeneration of the inner rim median meniscus. Dr. Klein noted there is evidence of significant osteoarthritis of the right knee which predates the injury of February 12, 1983. Dr. Klein further indicated that the statements by Dr. Valleley, the treating doctor until July, 1984 are inconsistent in that in his last report from July, 1984 he stated that clinically there was no stability which conflicts with his conclusion that the ligaments were incompetent. In any event, Dr. Klein concluded that the claimant's impairment of a right kneee condition does not meet or equal the level of severity prescribed in the Listings. He further concluded that the claimant's osteoarthritis as shown in the x-ray of the right knee, a condition which predates the injury of February 12, 1983, does not meet or equal the standards contemplated in the listings for presumed disability.

(Tr. 21). The ALJ found as well that no combination of plaintiff's impairments was medically equivalent to a listed impairment. Despite statements from plaintiff's treating physicians that she was disabled, he concluded that Williams was not disabled within the meaning of the Act.

In determining that Williams was not disabled, however, the Secretary failed to address plaintiff's contention that even though her knee condition might not meet or equal the requirements of the listed impairment, *see* 20 C.F.R. § 404 subpt. P, app. 1 § 1.03, she nonetheless could not perform any gainful activity. Her counsel clearly presented the argument that Williams need not meet or equal the listing in order to qualify for disability benefits if other evidence demonstrated that she could not perform any gainful activity.

ATTORNEY: Not that I want to explain to you Judge, but that I would like the court to be aware of. It is true that Dr. Klein testified that in his opinion she neither met or equalled the listing.

However, I think this court is aware, Judge, that there are federal court cases, and if the court wishes I'd be happy to brief the issue, where the meeting of equalling of the listings is not required. It is not required. An individual who cannot do any substantial gainful ac— any substantial activity, no, any gainful activity can be found disabled, notwithstanding the listings. There is also another interesting point, judge. When I asked Dr. Klein could she do sedentary work and I used specific numbers like sitting 6 hours, standing or walking 2 hours, he answered probably not. When you questioned him and used a more general definition of sedentary work, he answered the opposite. The point is, though, Judge, SSR 8310, which I know your're aware of, does set forth the requriements of sedentary work in the exact way that I gave my hypothetical, and based on SSR 8310, we have a situation—I think the court has a real problem. We have a situaton where we have MA testimony that she doesn't meet or equal, but the same MA testimony testifying on the basis of a ruling that she cannot do sedentary work. Your Honor, it's our position that Mrs. Williams is entitled because (a) numerous court cases have held that the requirement of meeting or equalling the listing need not be met and also because an individual who cannot do sedentary work must, almost by definition, equal the listing.

(Tr. 58–59). Under the circumstances, the Secretary erred as a matter of law in failing to assess Williams' residual functional capacity. In light of plaintiff's contentions the Court could uphold the Secretary only if the record contained substantial evidence that plaintiff possessed the residual functional capacity to perform gainful activity. There is no substantial evidence that she does.

Plaintiff's treating physician, Dr. John Valley, stated in a letter dated September 17, 1984 that plaintiff "has a total disability relative to her left knee." (Tr. 128). In a disability certificate dated February 17, 1983, Dr. Francis Reynolds noted that

Williams was totally incapacitated and would be unable to work until further notice.[4] (Tr. 145). Dr. Rubin Fleisher, who examined plaintiff consultatively, diagnosed torn ligaments and opined that plaintiff could not return to her job as a therapy aide in a psychiatric center. (Tr. 101). The Secretary's medical advisor Dr. Klein, far from disputing plaintiff's condition, testified only that from his examination of the medical records in the case, Williams' knee condition did not meet or equal the listed impairment.[5] He never testified unequivocally that plaintiff would be able to perform sedentary work as that category is described by the Secretary's regulations. (Tr. 50–52). The record then simply contains no substantial evidence to support the Secretary's determination that plaintiff could perform any gainful activity.

Because the ALJ's finding that Williams could perform gainful activity is not supported by substantial evidence, the Court reverses the Secretary's determination. On the basis of the record, however, the Court cannot determine whether despite her knee condition, Williams might be able to perform any gainful activity. Accordingly, the Court remands the case to the Secretary to make that determination in light of his assessment of Williams' residual functional capacity.

## CONCLUSION

The Secretary's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is denied. Because the Secretary erroneously

premised his determination solely on the finding that plaintiff's knee condition did not meet or equal a listed impairment rather than assessing her residual functional capacity, the Court reverses and vacates the Secretary's determination. On remand, the Secretary shall assess plaintiff's residual functional capacity. In making that assessment, the Secretary shall accord the reports of plaintiff's treating physicians the weight due under the treating physician rule. In addition, the Secretary shall consider plaintiff's testimony concerning the pain she experiences as a result of her condition. The instant action hereby is dismissed, subject to being reopened by either party within a reasonable time following proceedings by the Secretary.

It is so ordered.

---

**4.** As the Secretary correctly notes, the record does not document any subsequent treatment by Dr. Reynolds.

**5.** Within the Second Circuit, "a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is; (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder." *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986) (citing *Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir.1984)).

Appropriate reports of consultative physicians may constitute substantial, contradictory evidence, *Mongeur v. Heckler,* 722 F.2d 1033, 1039 (2d Cir.1983) (*per curiam* ), but whether they do so in any specific instance depends upon the thoroughness of the underlying medical examination, if any, and the degree of light the report sheds on the conflicting assessment of the treating physician. *See Bluvband v. Heckler, supra,* 730 F.2d at 893. Inasmuch as he never examined plaintiff, Dr. Klein's testimony properly relates only to whether the medical records of plaintiff's physician establish a disability that meets or equals one of the listed impairments. His testimony would not be substantial contradictory evidence to rebut a treating physician's conclusion that plaintiff was disabled. *See id.*