### Dorothy E. ROBINSON

v.

### Louis W. SULLIVAN, M.D.,[1] Secretary of Health and Human Services.

### Civ. A. No. 87–8019.

United States District Court, E.D. Pennsylvania.

April 4, 1990.

---

1. Louis W. Sullivan succeeded Otis R. Bowen as Secretary of Health and Human Services on March 1, 1989. He is substituted as defendant in this action under Fed.R.Civ.P. 25(d)(1).

Robert A. Wilson, Philadelphia, Pa., for plaintiff.

Richard Mentzinger, Jr., Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

O'NEILL, District Judge.

### I. *Introduction.*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Secretary of Health and Human Services denying her claim for Disabled Widow's Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 *et seq.* (1982).[2] On March 17th, 1989, I referred this action to United States Magistrate William F. Hall, Jr., pursuant to 28 U.S.C. § 636(b). The parties subsequently filed cross motions for summary judgment.

After review of the record and the parties' contentions,[3] the Magistrate submitted a report and recommendation which recommended denial of the parties' cross-motions for summary judgment and remand to the Secretary for further development of the record. The Magistrate concluded that the Secretary must consider the claimant's "residual functional capacity" ("RFC")[4] in determining whether she is entitled to benefits.

Pursuant to 28 U.S.C. § 636(b)(1), I conducted a *de novo* review of the Magistrate's findings, and approved and adopted the Report on February 14, 1990. The Secretary has filed a motion to alter or amend judgment, arguing that I should consider the effect of the Supreme Court's recent decision in *Sullivan v. Zebley,* —— U.S. ——, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), on whether the Secretary must consider a claimant's RFC in widows' disability cases.

---

**2.** The administrative proceeding underlying this action concluded on June 12, 1987. On that date the Administrative Law Judge issued a decision denying claimant widow's insurance benefits. *See* Transcript at pp. 10–15.

**3.** The Magistrate's Report sets forth the facts underlying this action, Report, pp. 1–5, and I need not repeat them here.

**4.** The phrase "residual functional capacity" refers to an individual's capacity to engage in basic work activities. *See City of New York v. Heckler,* 742 F.2d 729, 732 (2d Cir.1984) *aff'd,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *see also discussion, infra,* at 991–993.

For the reasons that follow, I conclude that the Secretary's widow disability regulations cannot be reconciled with the statute they purport to implement.[5] I hold that the Secretary must consider RFC in widows' cases. Since he did not do so in this case, I will decline to vacate or amend my February 14, 1990 Order.

## II. *Standard for Widows' Benefits.*

The Social Security Act provides social security insurance benefits to, among others, disabled wage earners and disabled widows, widowers, or surviving divorced spouses of deceased wage earners.[6] Different substantive standards distinguish the disability determination for widows from the disability determination for wage earners. In order to obtain benefits under the statute, a wage earner must demonstrate an inability to engage in *substantial* gainful activity. In contrast, a widow must demonstrate that she is incapable of *any* gainful activity. *Compare* 42 U.S.C. § 423(d)(2)(A) (1983 & Supp.1989) *with* 42 U.S.C. 423(d)(2)(B) (1983 & Supp.1989).[7]

Pursuant to 42 U.S.C. § 405(a), the Secretary has promulgated a five step sequential disability evaluation procedure applicable to wage earners. 20 C.F.R. § 404.1520 *et seq.* (1989). *See Bowen v. Yuckert,* 482 U.S. 137, 140–142, 107 S.Ct. 2287, 2290–2291, 96 L.Ed.2d 119 (1987). The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. 20 C.F.R. §§ 404.1520(a), (b), (c). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. If a claimant's impairment meets or equals a listed impairment, he or she is conclusively presumed to be disabled and entitled to benefits. 20 C.F.R. § 404.1525(a).

If a wage earner claimant's impairment does not meet or equal a listed impairment, the analysis proceeds to the fourth and fifth steps. The fourth step is an assessment of the claimant's RFC and a decision whether it permits him to engage in his prior work. 20 C.F.R. § 404.1520(e). If the claimant's RFC is consistent with prior employment, benefits are denied. 20 C.F.R. § 416.920(e). If the claimant's RFC is not consistent with his prior employment, the fifth and final step is a decision as to whether the claimant, in light of his RFC, age, education and work experience, has the capacity to perform "alternative occupations available in the national economy." 20 C.F.R. § 404.1520(f). If not, benefits are awarded. 20 C.F.R. § 416.920(f).

The Secretary's test for determining whether a widow claimant is disabled is an

**5.** This holding is limited to requiring the Secretary to undertake an individualized assessment of the claimant's RFC. The means and manner in which this individualized assessment is undertaken is left to the discretion of the Secretary. *See discussion, infra,* n. 19.

**6.** The term "widow" is used throughout this Opinion only for convenience. Nothing in this Opinion is intended to distinguish widows from other persons similarly treated by the Act and the regulations, *e.g.,* widowers and surviving divorced spouses. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1577.

**7.** Section 423(d)(1)(A) provides:
(1) The term "disability" means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....
Section § 423(d)(2) provides:

(2) For purposes of paragraph (1)(A)—
(A) An individual (except a widow, surviving divorced wife, widower or surviving divorced husband ...) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he ... *cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work....*
(B) A widow, surviving divorced wife, widower, or surviving divorced husband shall not be determined to be under a disability ... unless his or her physical or mental impairment or impairments are of a level of severity which *under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.*
42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(B) (1983 & 1989 Supp.) (emphasis supplied).

abbreviated version of the wage earner test. A widow qualifies for benefits only if she qualifies through Step 3 of the evaluation procedure. 20 C.F.R. §§ 404.1576–404.1578. In order to obtain benefits under the regulations, a widow must establish that she has a physical or mental impairment which has the "specific clinical findings that are the same as those for any impairment in the Listing of Impairments or are medically equivalent to those for any impairment shown there." 20 C.F.R. § 404.1578(a).[8] If a widow cannot qualify under the Listing, benefits are denied. There is no inquiry corresponding to the fourth and fifth steps of the procedure applicable to wage earners and therefore no assessment of the claimant's RFC.

The Listing of Impairment is a description of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.[9] Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, the impairment must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *See* Social Security Ruling (SSR) 83–19,[10] West's Social Security Reporting Service (Rulings Supp. Pamph. 1988) 90, 91–92 ("An impairment 'meets' a listed condition ... only when it manifests the specific findings described in the set of medical criteria for that listed impairment.... The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding— no matter to what extent that finding may exceed the listed value") (emphasis in original).

SSR 83–19 further holds that a claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairments, or combination of impairments is as severe as that of a listed impairment. SSR 83–19, at 92–93 ("it is incorrect to consider whether the listing is equalled on the basis of an assessment of *overall* functional impairment.... The functional consequences of the impairments ... irrespective of their nature or extent, *cannot* justify a determination of equivalence") (emphases in original).

**8.** The regulations regarding widows' benefits provide in full as follows:

§ 404.1577 Disability defined for widows, widowers, and surviving divorced spouses.

To be entitled to a widow's or widower's benefits as a disabled widow, ... the law provides that you must have a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. The impairments must be of a level of severity to prevent a person from doing any gainful activity. To determine whether you are disabled, we consider only your physical or mental impairment. We do not consider your age, education and work experience. We also do not consider certain felony-related and prison related impairments, as explained in § 404.1506.

§ 404.1578 How we determine disability for widows, widowers, and surviving divorced spouses.

(a) We will find that you are disabled and pay you widow's or widower's benefits as a widow, widower, or surviving divorced spouse if—

(1) Your impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any impairment shown there;

(2) Your impairment(s) meet the duration requirement.

(b) However, even if you meet the requirements in paragraphs (a)(1) and (2) of this section, we will not find you disabled if you are doing substantial gainful activity.

20 C.F.R. §§ 404.1577–404.1578.

**9.** There are 125 impairments defined in the adult listings. The body system categories in the adult listings are: musculoskeletal, special senses and speech, respiratory, cardiovascular, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine. In addition, there are four groups of listings not categorized by body system: multiple body system impairments, neurological impairments, mental disorders, and malignant neoplastic diseases.

**10.** Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the administration." 20 C.F.R. § 422.408; *see Heckler v. Edwards,* 465 U.S. 870, 873, n. 3, 104 S.Ct. 1532, 1534, n. 3, 79 L.Ed.2d 878 (1984).

In sum, under the regulations and SSR 83–19, the Secretary does not afford widows' disability claimants with an RFC analysis comparable to Step 4 of the wage earner's procedure or an opportunity to demonstrate that the overall impact of her impairment(s) is as severe as that of a listed impairment. The issue in this case is whether the Secretary's failure to provide an individualized assessment of a widow's RFC is consistent with the language of 42 U.S.C. § 423(d)(2)(B).

### III. *Standard of Review.*

■■■ This case involves a facial challenge to the Secretary's Social Security regulations.[11] In assessing such a challenge, a reviewing court must defer to an agency's interpretation of a statute which the agency administers so long as the interpretation is reasonable. *Zebley v. Bowen,* 855 F.2d 67, 72 (3d Cir.1988) *aff'd,* — U.S. ——, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The Act provides that the "Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions." 42 U.S.C. § 405(a). Because Congress did not describe explicitly a method for determining whether a claimant is disabled, my review is limited to determining if the regulations in question, 20 C.F.R. §§ 404.1577 and 404.1578, exceed the Secretary's authority or are arbitrary or capricious. *Yuckert, supra; Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983); *Zebley,* 855 F.2d at 72.[12] The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear legislative intent. *Id.* The agency's regulations must give effect to the unambiguously expressed intent of Congress. *Id.*

### IV. *Discussion.*

■■■ The claimant argues that the Secretary's regulations governing widows' disability are inconsistent with the language of § 423(d)(2)(B). She contends that, taken separately, her impairments do not meet or equal any listed impairment, but in combination they prevent her from engaging in any gainful activity. She asserts that she has met the statutory standard, but has been denied benefits because she does not qualify under the regulations. She therefore contends that the regulations are inconsistent with § 423(d)(2)(B).[13]

11. The parties differ as to the precise issue before me in this action. In their cross-motions for summary judgment the parties argued that the issue was whether the Secretary's decision was supported by substantial evidence. *See* Memorandum in support of plaintiff's motion for summary judgement filed February 14, 1989, at 3; Brief in support of defendant's motion for summary judgment, at 3–4. The Magistrate stated that "[t]he issue before the court is whether the determination of the Secretary is supported by substantial evidence." Report, at 6.

The Report actually decided a different issue, that RFC is an element the Secretary must consider in widow's disability cases. Report, at 7–9. In so doing, the Report reached a legal conclusion concerning the validity of the Secretary's regulations. *Id.* I conclude, therefore, that the issue presently before me is a legal challenge to the Secretary's regulations, and not a challenge to the sufficiency of the evidence.

The Secretary argues in his Objections to the Magistrate's Report and Recommendation that "[t]he validity of the Secretary's regulatory scheme for evaluating widow's claims was not raised or briefed by the parties, yet, [sic] the magistrate decided that issue." Defendant's Objections to Report and Recommendation, at 1. Whether or not this was the case, both the Secretary's Objections to the Report and his current motion to vacate or amend judgment provide the Secretary with ample opportunity to raise his arguments in support of the regulations.

12. *See also Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the language of the statute").

13. The Secretary's argument that language of § 423(d)(2)(B) grants the Secretary the exclusive authority to determine when benefits are to be awarded is wholly without merit. *See Marcus v. Bowen,* 696 F.Supp. 364, 380 n. 21 (N.D. Ill.1988) ("Congress did not intend deference to

After review of claimant's arguments, the Magistrate held that the Secretary must review a claimant's functional limitations in widows' disability cases. Report, at 8-9. In arriving at this conclusion, the Magistrate relied in part on the Court of Appeals for the Third Circuit's decision in *Zebley v. Bowen, supra.* At the time the Magistrate issued the Report, the Supreme Court had granted certiorari in *Zebley.* *See* — U.S. —, 109 S.Ct. 2062, 104 L.Ed.2d 627 (1989). On February 20, 1990, the Supreme Court affirmed the *Zebley* decision. *Sullivan v. Zebley, supra.*

In his motion to vacate or amend judgment, the Secretary contends that the Supreme Court's decision in *Zebley* supports the position that RFC is not a proper consideration in widows' disability cases. In *Zebley*, the Court considered the Secretary's regulations concerning child disability benefits.[14] The Court concluded that under the Act, "a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working." *Zebley*, 110 S.Ct. at 890. The issue facing the Court was whether the Secretary's method of determining child disability was consistent with that statutory standard. *Id.* at 890-91.

In analyzing the Secretary's regulations governing child disability cases, the *Zebley* Court focussed on the Secretary's Listing of Impairments.[15] The Court noted that the listings which a child's disability must match or equal in order for the child to obtain benefits is in several ways more restrictive than the statutory standard:

First, the listings obviously do not cover all illnesses and abnormalities that actually can be disabling[16] ... Second, even those medical conditions that are covered in the listings are defined by criteria setting a higher level of severity than the statutory standard, so they exclude claimants who have listed impairments in a form severe enough to preclude *substantial* gainful activity, but not quite severe enough to meet the listings level—that which would preclude *any* gainful activity. Third, the listings also exclude any claimant whose impairment would not prevent any and all persons from doing any kind of work, but which actually precludes the particular claimant from working, given its actual effect on him—such as pain, consequences of medication, and other symptoms that vary greatly with the individual—and given the claimant's age, education and work experience. Fourth, the equivalence analysis excludes claimants who have unlisted impairments, or combination of impairments, that do not fulfill the criteria for any one listed impairment.

*Id.* at 893 (emphasis in original) (footnote omitted). The Court concluded that "there are several obvious categories of claimants who would not qualify under the listings, but who nonetheless would meet the statutory standard." *Id.*

The *Zebley* Court noted that in the case of adult disability the regulations' shortcomings are remedied by the final step of the Secretary's test, which gives a claimant who does not qualify under the listings an opportunity to "show that his impairment in fact prevents him from working." *Id.* However, under the regulations, children are not afforded a similar opportunity:

the Secretary where he is disloyal to the statutory requirement that the extent of impairment be determined").

14. The regulations implementing the Title II disability standard for widows' disability cases, 42 U.S.C. § 423, at issue in this case, and those implementing the standard child benefits standard, 42 U.S.C. § 1382(a)(3), are the same in all relevant respects. *Compare* 20 C.F.R. §§ 404.-1520–1530 with §§ 416.920–930 (1989). *See Zebley*, 110 S.Ct. at 888 n. 3.

15. The Listing of Impairments for children includes both the general listing, *see supra,* at 992 and n. 9, and a special listing of children's impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1

16. [Footnote by this Court] The *Zebley* Court noted that "the Secretary himself has characterized the adult listing as merely containing 'over 100 *examples* of medical conditions which ordinarily prevent' a person from working and has recognized that 'it is difficult to include in the listing all the sets of medical findings which describe impairments severe enough to prevent any gainful work.' SSR 89–13, at 91. (emphasis added)." *Zebley*, 110 S.Ct. at 893.

Children whose impairments are not quite severe enough to rise to the presumptively disabling level set by the listings, children with impairments that might not disable any and all children, but which actually disable *them*, due to symptomatic effects such as pain, nausea, side effects of medication, etc., or due to their particular age, educational background and circumstances; and children with unlisted impairments or combinations of impairments that are not equivalent to any one listing—all these categories of child benefits are simply denied benefits, even if their impairments are of "comparable severity" to ones that would actually (though not presumptively) render an adult disabled.

*Id.* at 894 (footnote omitted) (emphasis in original). The Court concluded that "[t]he child-disability regulations are simply inconsistent with the statutory standard of 'comparable severity.'" *Id.*

In support of its conclusion, the *Zebley* Court cited the fact that the Secretary "applies the same approach to child-disability determinations under Title XVI and to widows' and widowers' disability benefits under Title II, *despite the fact that Title II sets a stricter standard for widows' benefits.*" *Id.* at 895 (emphasis added). The Secretary contends that the Court's recognition that the Act establishes a stricter standard in widows' benefits cases supports the position that RFC should not be considered in such cases.

I reject the Secretary's argument. The *Zebley* Court's discussion of the distinction between childrens' benefits and widows' benefits serves only to support the Court's conclusion that the regulations concerning child disability are invalid. In so doing, the *Zebley* Court merely affirmed that which the claimant in this case does not dispute, that the statutory standard for widows' benefits is stricter than the wage-earners' standard. *See* Plaintiff's Brief in support of her motion to deny defendant's motion to alter or amend judgment, at 4. The fact that widows are held to a higher statutory standard does not permit the Secretary to deny benefits to claimants who meet the statutory requirements but who not qualify under the regulations.

The *Zebley* Court held that the Secretary's regulations were invalid in part because a child with unlisted impairments or with a combination of impairments that are not equivalent to any one listing would be denied benefits even if the disability prevents the child from engaging in any substantial gainful activity. *Id.* at 893–94; *see supra*, at 993–995. In this case the Secretary's regulations governing widows' benefits are invalid under an analogous rationale. Under the regulations, a widow with unlisted impairments or a combinations of impairments which render her unable to engage in any gainful activity but which are not equivalent to any one listing would be denied benefits. A denial of benefits in such a case is inconsistent with the language of the statute.

The Secretary's reliance on *Dorton v. Heckler*, 789 F.2d 363 (6th Cir.1986) and *Willeford v. Secretary of Health & Human Services*, 824 F.2d 771 (9th Cir.1987) is misplaced. These cases offer only marginal support for the Secretary's position.

In *Dorton*, the issue facing the Court was whether the ALJ's determination that a widow's impairments were not medically equivalent to a listed impairment was supported by substantial evidence. The Court concluded that the Secretary's decision to deny benefits was supported by substantial evidence. In so holding, the Court stated, "[n]or may we rely upon the evidence in the record which indicates that [the claimant's] physical impairments when taken together are sufficiently severe to prevent [the claimant] from engaging in any gainful activity." *Id.* at 367. In an accompanying footnote, the Court noted that "[the evidence] presents a compelling case factually for finding disability ... however, we are constrained by the rigid requirements of the regulations to overlook this evidence because [claimant] is not a wage earner and is subject to the stricter widow's requirements." *Id.* at 367 n. 3.

The *Dorton* Court did not explicitly address the question whether the Secretary's regulations are consistent with the man-

date of § 423(d)(2)(B). The Court simply applied the regulations without considering the issue raised in this case. *Id.* Therefore, *Dorton* does not provide significant guidance.

Similarly, *Willeford* does not support the Secretary's position. The *Willeford* Court, after examining the Secretary's regulations and the enabling legislation, concluded that while widows' disability is to be determined by reference to the Listing of Impairments,

> [t]here is merit to [claimant's] suggestion that the ability to engage in gainful activity is the "core" of the medical equivalence test. And it is distinctly possible that there will be cases where the absence of that ability is demonstrated in such a compelling fashion that the listing becomes a mechanical and unrealistic bar to a just determination.

*Willeford,* 824 F.2d at 774. The Court held that the action before it presented a different situation, in which the claimant had not attempted to comply with the requirements of the regulations, and therefore affirmed the Secretary's denial of benefits. *Id.*[17]

In contrast to the limited inquiry of *Dorton,* the Courts which expressly have addressed the validity of the widows' disability regulations have arrived at the same conclusion I reach in this case. In *Tolany v. Heckler,* 756 F.2d 268 (2d Cir.1985), the Court of Appeals for the Second Circuit suggested that the Secretary should consider a claimant's RFC in determining whether a widow can do "any gainful activity" within the meaning of § 423(d)(2)(B). The *Tolany* Court noted that the special procedure for widows' benefits does not expressly state whether RFC will be considered. *Id.* at 271. Furthermore, the Court noted that while the special procedure states when entitlement will be found—when the impairment meets a listing or is medically equivalent to a listing—it does not say that such a finding is the exclusive method of

showing that an impairment precludes an individual from engaging in any gainful activity within the meaning of § 423(d)(2)(B). *Id.*

The *Tolany* Court suggested, but did not conclude, that RFC should be considered in widows' disability cases, reasoning that

> [i]f a claimant has an impairment that is not listed and is not the medical equivalent of a listed impairment, but the claimant nevertheless is unable to engage in any gainful activity, it is difficult to see how that person may be denied benefits. It would seem anomalous if an impairment that is only presumed to be disabling because it is listed results in allowance of benefits, yet an impairment that in fact leaves the claimant without the residual functional capacity to engage in any gainful activity is insufficient to warrant benefits.

*Id.* at 271.

In *Kier v. Sullivan,* 888 F.2d 244 (2d Cir.1989), the Court of Appeals for the Second Circuit firmly adopted the views tentatively expressed in *Tolany.* The Court concluded that the Secretary's failure to consider RFC in widows' disability cases conflicts with the directive of § 423(d)(2)(B):

> The Act specifies that all widows with impairments at a "level of severity ... sufficient to preclude an individual from engaging in any gainful activity" are entitled to benefits.... Under the Act, the Secretary is authorized to promulgate a Listing of Impairments to establish the level of severity deemed sufficient to preclude an individual from engaging in gainful activity. This underinclusive category of impairments only establishes the level of severity necessary to demonstrate disability, rather than comprises the entire universe of available claims. *If a claimant's residual functional ca-*

---

**17.** I note that Judge Pregerson, writing in dissent in *Willeford,* stated that he would hold that the claimant had demonstrated "in a compelling fashion" that she was unable to engage in any gainful activity. *Willeford,* 824 F.2d at 774. Judge Pregerson noted that "[b]ecause demonstrating inability to engage in gainful activity is the core of the ... medical equivalence test, denying [the claimant] widow's benefits solely on the basis of that test creates 'a mechanical and unrealistic bar to a just determination,'" *id.,* and concluded that benefits should have been awarded.

*pacity leaves her unable to perform any gainful activity, her impairments, even if unlisted, must be at the level of severity of an impairment included in the Secretary's Listing.*

*Id.* at 247 (emphasis supplied).

In *Cassas v. Secretary*, 893 F.2d 454 (1st Cir.1990), the Court of Appeals for the First Circuit adopted the reasoning of *Tolany* and *Kier.* The *Cassas* Court stated:

The informing principle underlying the listings would seem to be that, in the generality of cases, persons with a listed impairment lack the ability to work. In other words, their RFC for gainful activity is relatively nil. But, as the Second Circuit pointed out in *Kier*, the listings do not exhaust the entire universe of incapacities. Consequently, in determining medical equivalence, it seems sensible to keep in mind basic principles, focussing the inquiry on whether the individual has the capacity to perform gainful activity.

*Id.* at 458. The Court concluded, "... we agree with the Second Circuit that residual functional capacity cannot be ignored in considering medical equivalence and, ultimately, disability." *Id.* at 459. *See also Paris v. Schweiker*, 674 F.2d 707, 710 (8th Cir.1982) (core of medical equivalents test in whether claimant is capable of gainful activity; Secretary directed to pay benefits to widow whose combined impairments precluded gainful activity); *Marcus*, 696 F.Supp. at 379 ("... it cannot be concluded that Congress intended benefits to be denied without an adjudicatory inquiry into the extent of impairment. Where function-al analysis is required, either to determine the severity of a single impairment or to measure the combined impact of multiple impairments, the Secretary's denial of benefits under current practice must fall").

I conclude that under § 423(d)(2)(B) the Secretary must provide widows' disability claimants with an individualized opportunity to demonstrate inability to engage in any gainful activity.[18] The Secretary's regulations are invalid only insofar as they do not permit such a determination. On remand, the Secretary must afford the claimant such an opportunity for an individualized assessment of her RFC.[19] If the claimant is unable to engage in any gainful activity, she must be awarded benefits.

## V. Conclusion.

For the foregoing reasons, I conclude that the Secretary's widows' disability regulations are inconsistent with the language of the § 423(d)(2)(B) and that the Secretary must consider a claimant's RFC in widows' disability cases. I therefore decline to amend or alter my Order of February 14, 1990.

---

18. The Court of Appeals for the Third Circuit has reserved judgment on this issue. In *Finkelstein v. Bowen*, 869 F.2d 215 (3d Cir.1989), the Court held that an order remanding a widows' disability case to the Secretary for consideration of the claimant's RFC was not a final order permitting appellate review. *Id.* at 220. The Supreme Court has granted certiorari in the case. *See* —— U.S. ——, 110 S.Ct. 862, 107 L.Ed.2d 947 (1990).

19. I emphasize that my decision in this regard is limited. I hold only that in widows' disability cases the Secretary must provide each claimant with an individualized assessment of whether the claimant can engage in any gainful activity. This assessment must include an analysis of the claimant's RFC. However, the means and manner in which this assessment is undertaken must be left to the Secretary's discretion. The Secretary may choose to provide the claimant with a fourth step in the widows' assessment process which would mirror Step 4 of the wage earner test, or may proceed in any other fashion which provides for an indiviudalized assessment of the claimant's RFC.