**Jeannette DAVIDSON,**
**Plaintiff–Appellee,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
**Defendant–Appellant.**

**No. 88–1472.**

United States Court of Appeals,
Tenth Circuit.

Aug. 29, 1990.

Marguerite G. Lokey, Asst. Regional Counsel, Office of Gen. Counsel, U.S. Dept. of Health and Human Services, Dallas, Tex. (William L. Lutz, U.S. Atty., Gayla Fuller, Chief Counsel, Region VI, Karen J. Sharp, Principal Regional Counsel, Social Security Disability Litigation Branch, with her on the brief), for defendant-appellant.

Daniel M. Taubman, Colorado Coalition of Legal Services Programs, Denver, Colo. (Gary J. Martone, Albuquerque, N.M., on the brief), for plaintiff-appellee.

Before BRORBY and EBEL, Circuit Judges, and JOHNSON, District Judge.*

PER CURIAM.

This appeal presents the issue of whether the regulations established by the Secretary for the federal Department of Health and Human Services (Secretary) to guide evaluation of claims for social security widow's disability benefits are invalid because they do not implement the unambiguous language of the statute that they purport to administer.[1] The Secretary denied Mrs. Jeannette Davidson's claim for widow's disability benefits, and an administrative law judge concurred in that decision. The district court reversed and remanded to the Secretary, holding that the Secretary must consider Mrs. Davidson's residual functional capacity for any gainful activity without limiting its inquiry to whether her impairments fit within the "listings" of severe impairments set forth in the regulations.

---

* The Honorable Alan B. Johnson, District Judge, United States District Court for the District of Wyoming, sitting by designation.

1. Although the parties submitted briefs to this court on the issue of appellate jurisdiction, we have jurisdiction on this matter pursuant to the Supreme Court's recent opinion in *Sullivan v. Finkelstein*, —— U.S. ——, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990).

The Secretary appealed to this court. We affirm.

On April 30, 1984, Mrs. Davidson applied concurrently for both worker's disability benefits and widow's disability benefits. Mrs. Davidson's claim was denied by the Secretary on the grounds that, as to her worker's disability claim, she was able to return to her former work as a bookkeeper, and, as to her widow's disability claim, she did not meet the special, stricter disability requirements for the widow's disability program. R.Vol. II at 89. On Mrs. Davidson's application to the Secretary for reconsideration, this decision was affirmed. *Id.* at 95–97. Mrs. Davidson then requested and received a hearing before an administrative law judge (ALJ), held November 15, 1984. To support her applications, she submitted the opinion of her treating physician, describing her condition and concluding that she was "unable to work." *Id.* at 250. Her application was also supported by objective medical test findings of mild left pedal edema, diagnosed as probable left lower extremity ischemic neuropathy resolved, with diabetes mellitus. *Id.* at 18. In addition, at the ALJ hearing Mrs. Davidson testified that she could not sit for more than forty-five minutes, stand for more than thirty minutes, bend, squat, or lift more than eight pounds. *Id.* at 32–33, 36–37, 42–43. She related that she had constant pain in both legs and had to lie down two to four times each day for at least one-half hour each time. *Id.* at 31–33, 39–41. She stated that she had to get up from sleeping every hour or hour and a half most nights to relieve her leg cramps. *Id.* at 37.

In response to Mrs. Davidson's claim for widow's disability benefits, the Secretary countered that none of Mrs. Davidson's impairments, taken individually or in combination, met or were the equivalent of an impairment in the Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Part A) (hereafter referred to as the listings).

In his written order denying Mrs. Davidson's widow's disability benefits claim, issued January 10, 1985, the ALJ set forth a summary of all the evidence submitted by both Mrs. Davidson and the Secretary. He then made seven findings:

1. The claimant was born on February 12, 1926.

2. The claimant is the widow of the wage earner, who died fully insured on January 27, 1971, and the claimant is not married.

3. The period during which the claimant must establish that she was under a disability extended through June 30, 1984, but not thereafter.

4. The medical findings shown in the medical evidence of record establish the existence of residuals of vascular lower extremity bypass grafts due to severe atherosclerotic peripheral vascular disease, osteoporosis, and controlled diabetes mellitus with no significant end organ changes on or before June 30, 1984.

5. The medical evidence of record does not establish that on or before June 30, 1984, or in fact through the date of this decision, the claimant's impairments had specific clinical findings, which lasted or were expected to last for a period of at least 12 continuous months, which are the same as those for any impairment in the Listing of Impairments in Appendix 1 (20 CFR 404.1525).

6. The medical evidence of record does not establish that the claimant, on or before June 30, 1984, or in fact through the date of this decision, had any impairment or combination of impairments, which lasted or was expected to last for a period of at least 12 continuous months, which is medically equivalent to an impairment listed in Appendix 1 (20 CFR 404.1526).

7. The claimant was not under a "disability," as defined in the Social Security Act, on or before June 30, 1984, or in fact through the date of this decision (20 CFR 404.1578).

*Id.* at 18–19. He concluded that:

Based on the medical evidence of record, it is found that the claimant's impairments, residuals of vascular lower extremity bypass grafts due to severe atherosclerotic peripheral vascular disease,

osteoporosis, and controlled diabetes mellitus with no significant end organ changes, have not met or equalled any section or sections in the Listing of Impairments, Appendix 1, Subpart P, Social Security Regulations No. 4, for a continuous period of at least 12 months and that she therefore has not been "disabled," as defined in Sections 404.1577 and 404.1578 of the Social Security Act at any time through the date of this decision.

*Id.* at 18. On February 22, 1985, the appeals council declined Mrs. Davidson's request for review of the ALJ decision. *Id.* at 3. Mrs. Davidson appealed to the federal district court.

The district court reversed and remanded denial of Mrs. Davidson's worker's disability benefits claim because neither the Secretary nor the ALJ had sufficiently evaluated Mrs. Davidson's pain based on the record as a whole, as required by *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987), and *Nieto v. Heckler,* 750 F.2d 59 (10th Cir.1984). *Davidson v. Secretary of Health & Human Servs.,* No. 85–0420–SC, slip op. at 5–6 (D.N.M. Jan. 25, 1988). The district court also reversed and remanded the Secretary's denial of Mrs. Davidson's widow's disability benefits claim, holding that the Secretary must consider Mrs. Davidson's residual functional capacity to perform any gainful activity. *Id.* at 10. The Secretary did not contest the district court decision concerning Mrs. Davidson's worker's disability benefits claim. However, the Secretary did appeal the district court's ruling concerning the standard for evaluation of a widow's disability benefits claim. Thus, we consider only Mrs. Davidson's widow's disability benefits claim.

The Social Security Act expressly grants the Secretary rulemaking power. *Sullivan v. Zebley,* —— U.S. ——, 110 S.Ct. 885, 890, 107 L.Ed.2d 967 (1990); *see* 42 U.S.C. § 405(a)(1982). "[O]ur review [of the Secretary's regulations] is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." *Zebley,* 110 S.Ct. at 890 (quoting *Bowen v. Yuckert,* 482 U.S. 137, 145, 107 S.Ct. 2287, 2293, 96 L.Ed.2d 119, 129 (1987), and *Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66, 74 (1983)). *See also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 703 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").

■ Widow's [2] disability benefits are provided as part of Title II of the Social Security Act. 42 U.S.C. § 402(e) (1982 & Supp. V 1987). In enacting the statute, the intent expressed by Congress was that the definition of "disability" applied to a widow's disability claim should be stricter than that applied to the claims of disabled wage earners. While the disability benefits program for wage earners requires that the claimant only show that he is unable to participate in "any *substantial* gainful work," *id.* § 423(d)(2)(A) (emphasis added), the disabled widow's benefits provision requires that the claimant show that she cannot engage in "*any* gainful activity." *Id.* § 423(d)(2)(B) (emphasis added).[3] This unambiguous language forms the nucleus of our analysis of the standard which the Sec-

---

**2.** The term "widow" is used in this opinion for convenience, but we do not intend to distinguish widows from other persons similarly treated by the Social Security Act or regulations, *e.g.,* widowers and surviving divorced spouses. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1577.

**3.** 42 U.S.C. § 423(d)(2)(B) provides:

A widow, surviving divorced wife, widower, or surviving divorced husband shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title [describing widow's insurance benefits and widower's insurance benefits, respectively]) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.

retary must use to determine whether a widow is sufficiently disabled to qualify for benefits.

A commentator has succinctly described the history of worker's disability insurance. Smith, *Developments in Social Security Law*, 21 Ind.L.Rev. 367 (1988) [hereinafter *Developments*]. Drawing on this article, we note that when Congress first passed the Social Security Act (the Act) in 1935, it contained no disability insurance program. *Id.* at 367. In 1954, Congress passed a disability "age freeze" program, which allowed a wage-earner who was unable to work because of a disability to continue to be insured under the Act for up to one year. In this version of the statute, "disability" was defined in purely medical terms, without reference to vocational factors. *Id.* at 368. In 1956, Congress added a monthly benefit to the age freeze if the wage earner was fifty years of age or older and met the definition of disability from the 1954 Act, which, again, included purely medical criteria. *Id.* In 1967, prompted by a marked increase in the number of claims for disability insurance and a perceived unwarranted judicial expansion of the definition of "disability," Congress redefined "disability" to require explicitly that any decision as to an individual's disability must take into account that person's potential for employment. Starting in 1967, and continuing to and including the present Act, a claimant may be adjudged disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at 368–69 (quoting 1 H. McCormick, *Social Security Claims & Procedures* § 410 at 449–50 (3d ed.1983)); *see* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a)(1988) ("To determine whether you are able to do any other work, we consider your residual functional capacity and your age, education, and work experience.")

As part of the 1967 amendments, the Act's disability insurance program was ex-

panded to include the widow's disability benefits program. S.Rep. No. 744, 90th Cong., 1st Sess., *reprinted in* 1967 *U.S. Code Cong. & Admin.News* 2834, 2842 (hereinafter referred to as the Senate Report). The legislative history of the section of the Act allowing for disabled widow's benefits makes it clear that Congress contemplated a stricter standard be used to define the term "disabled" as applied to disabled widows than that applied to disabled workers.

> [The amended House bill] . . . provided a more restrictive definition of disability for disabled widows and widowers than exists in present law for disabled workers; a widow or widower would not be found to be under a disability unless his or her impairments are of a level of severity deemed sufficient to preclude an individual from engaging in any gainful activity. . . .
>
> The Senate amendment struck out of the House bill . . . the more restrictive definition [of disability] applicable to widows and widowers.
>
> The conference agreement contains substantially the provision of the House bill, . . . .

Conf.Rep.No. 1030, 90th Cong., 1st Sess., *reprinted in* 1967 *U.S.Code Cong. & Admin. News* 3179, 3197. The Senate Report states:

> The determination of disability in the case of a widow or widower would be based solely on the level of severity of the impairment. Determinations in disabled widow and widower cases would be made without regard to nonmedical factors, such as age, education, and work experience, which are considered in disabled worker cases. Under this test, the Secretary of Health, Education, and Welfare would by regulation establish the severity of impairment which may be deemed to preclude an individual from engaging in any "substantial gainful activity" (as opposed to "gainful activity" as provided in the House bill). An individual whose impairments meet the level of severity established by the regulations of the Secretary would generally be found to be disabled, although, of course,

if other evidence establishes ability to engage in substantial gainful activity despite such impairments, he would not be found disabled; and individuals whose impairments do not meet this level of severity may not in any case be found disabled.

Senate Report at 2883.

The Secretary responded to this mandate for stricter standards in the case of widow's disability benefits by promulgating regulations that prohibit consideration of age, education and work experience, 20 C.F.R. § 404.1577, and that limit the Secretary's determination of disability to those impairments contained in, or equivalent to those contained in, the regulatory listings of impairments. *See Hansen v. Heckler*, 783 F.2d 170, 172 (10th Cir.1986) (recognizing the stricter standard).

■ The Secretary's regulations for widow's disability benefits adopt a significant portion of the procedure for determining whether a claimant is qualified for worker's disability benefits. In *Bowen v. Yuckert*, the Supreme Court described the five-step procedure used to evaluate worker's disability claims:

Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. If he is not, the decisionmaker proceeds to step two, that determines whether the claimant has a medically severe impairment or combination of impairments....

. . . .

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, that determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds

to the fourth step, that determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work.

*Yuckert*, 482 U.S. at 140–42, 107 S.Ct. at 2291, 96 L.Ed.2d at 126–27 (citations omitted); *see also Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir.1988); Fried, *The Sequential Evaluation of Disability*, PLI Order No. C4–4179 (1987).

In *Tolany v. Heckler*, 756 F.2d 268 (2d Cir.1985), the Second Circuit illustrated the overlapping provisions between the requirements for disabled worker's claims and disabled widow's claims:

[A] widow will be denied disability insurance benefits if (1) she is engaged in "substantial gainful activity," *compare* 20 C.F.R. § 404.1520(a), (b), *with id.* § 404.1578(b); (2) her medical condition or impairment is not "severe," *compare id.* § 404.1520(c) *with id.* § 404.1578(a)(1) *and id.* 404.1525(a); or (3) her impairments are not the same as or the equivalent of any impairment on the Listing of Impairments, *compare id.* § 404.1520(d) *with id.* § 404.1578(a)(1). ... [B]ecause section 404.1577 explicitly precludes consideration of the claimant's age, education, and work experience, there is no doubt that the fifth step of the basic sequential procedure is not applicable to widows to the extent that it requires consideration of these factors.

*Id.* at 271.

The "listings," utilized at step three in the regulations for both types of claims, are an intermediate step in the Secretary's determination of whether a disabled wage earner is entitled to benefits. They describe a number of severe impairments for each of the major body systems. Because the listings could not possibly include every

physical impairment severe enough to prevent the claimant from "any gainful activity," the Secretary also established regulations for assessing unlisted impairments or combinations of impairments. 20 C.F.R. § 404.1526. This regulation guides the determination of whether an unlisted impairment or a combination of impairments is medically equivalent in severity to a listed impairment. *See id.* § 404.1511(b).

■ Under the Secretary's long-held interpretation of the regulations, the listings are the final and conclusive step in the Secretary's determination of whether a disabled widow is entitled to benefits. However, they were never intended to be the basis for denial of benefits, but rather were designed as an administratively efficient method of defining those who are *per se* qualified for benefits with no other inquiry necessary. *Marcus v. Bowen*, 696 F.Supp. 364, 373–75 (N.D.Ill.1988) (citing *Administration of Social Security Disability Insurance Program*, 1959: *Hearings Before the Subcommittee on the Administration of the Social Security Laws of the House Committee on Ways and Means*, 86th Cong., 1st Sess. 334 (1959); 44 Fed.Reg. 18,178 (Mar. 27, 1979); 45 Fed.Reg. 55,576 (Aug. 20, 1980)).

Recently the Supreme Court discussed the listings in the case of *Sullivan v. Zebley*, —— U.S. ——, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). *Zebley* can be readily distinguished from the case before us because *Zebley* is a case examining the propriety of the Secretary's regulations governing assessment of Social Security claims under 42 U.S.C. § 1381 (1982 & Supp. V), as applied to claimants who are children. Such claims are to be evaluated under the more relaxed standard of adult wage earner disability claims—that of an inability to sustain "substantial gainful activity"—with age-appropriate additions to the listings. *See Zebley*, 110 S.Ct. at 894–95. However, the *Zebley* decision does offer us guidance in our evaluation of the propriety of using the listings as a conclusive test of whether a widow is capable of participating in "any gainful activity."

In *Zebley*, the Court described the listings and the Secretary's determination of the functional equivalence of a listing:

The listings set out at 20 CFR pt. 404, subpt. P, App. I (pt. A), are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify....

For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. 20 CFR § 416.926(a) [substantively identical to 20 C.F.R. § 404.1526(a) ]. A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment. SSR 83–19, at 92–93.

*Zebley*, 110 S.Ct. at 891 (footnotes and quoted language from the regulation and the ruling omitted; emphasis in original).

The listings do not catalogue all illnesses and abnormalities that actually can be completely disabling. *See id.* at 891–93; *Kier v. Sullivan*, 888 F.2d 244, 247 (2d Cir.1989). In addition, "the equivalence analysis [also] excludes claimants who have unlisted impairments, or combinations of impairments, that do not fulfill all the criteria for any one listed impairment." *Zebley*, 110 S.Ct. at 893.

As the Court made clear in both *Zebley* and *Yuckert*, the function of the listings is to establish a description of impairments so severe as to constitute an automatic conclusive presumption of disability. *Zebley*, 110 S.Ct. at 892; *Yuckert*, 482 U.S. at 141, 107 S.Ct. at 2291, 96 L.Ed.2d at 127. By con-

trast, the Secretary's task, once presented with a claimant who is not working and whose impairments are severe but do not exactly coincide with or exceed the listings or their equivalents, is to determine whether the claimant has a medically determinable disability to the point of being precluded, not merely from substantial gainful activity, but from any gainful activity. 42 U.S.C. § 423(d)(2)(B). Nothing in the language of the statute itself or its legislative history permits the Secretary to adopt the conclusive presumption of the listings as the final step in analysis of a widow's disability benefits claim.

Given a severely disabled claimant who does not exactly fit the listings' qualifications, the district court insisted that the Secretary go beyond the listings and consider the claimant's residual functional capacity. Residual functional capacity is defined by the regulations as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). *See also Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988) (Residual functional capacity is "the claimant's maximum sustained work capability.")

■ Although the legislative history specifies that Congress intended that nonmedical factors such as age, education and work experience should not be considered under the stricter standard, Congress was silent as to the role of residual functional capacity in conjunction with a claim for widow's disability benefits. The regulations are equally unclear about the role of residual functional capacity in the analysis of a widow's disability claim. *See*

*Tolany,* 756 F.2d at 271. Section 404.1577, defining "disability" in the context of a widow's disability claim, does not prohibit consideration of the residual functional capacity of a disabled widow; it explicitly prohibits only consideration of age, education and work experience.[4]

Through step three, only medical considerations are utilized in evaluating all types of disability claims. In the next two steps of the analysis, both medical and vocational factors are utilized. Age, education and work experience are "vocational factors." *See, e.g.,* 45 Fed.Reg. 55,567–68, 55,578–79. Residual functional capacity is not included as a vocational factor; it is the claimant's physical and mental capacity, which, when combined with vocational factors such as age, education and work experience, enable the Secretary to evaluate what, if any, work a claimant is able to perform. The Secretary himself has described residual functional capacity as a medical evaluation. 45 Fed.Reg. 55,566 (1980).

As we have seen, the statute's legislative history is unambiguous that nonmedical "vocational factors" are not to be considered in evaluating a claim for widow's disability benefits. However, the Secretary, in limiting analysis to the listings, has also eliminated any medically documented residual functional capacity analysis. We find no justification for such elimination. If the widow's disability benefits claimant is severely disabled but does not meet or equal a description contained in the listings, the Secretary must necessarily consider the residual functional capacity implica-

---

**4.** Notwithstanding the Secretary's own regulations, it has been his clear position that residual functional capacity is not to be considered in widow's disability benefit claims. Ruling 83–19, promulgated by the Secretary as an interpretation of the listing of impairments and medical equivalence to those listings as applied to all disability claims, provided:

The "level of severity" of impairments in the listing is not defined in terms of the residual functional capacity (RFC) of the individual. When certain functional limitations *are* specified for a listed impairment, they relate only to the degree of dysfunction for that particular listing section and only to the specific function identified....

....

As in determining whether the listing is met, it is incorrect to consider whether the listing is equaled on the basis of *overall* functional impairment.

Social Security Ruling No. 83–19, West's Social Security Rep. Serv., Rulings 90, 91–92 (1989 Supp. Pamphlet).

As a result of the Supreme Court's holding in *Zebley,* this social security ruling has been withdrawn. However, it clearly shows that the Secretary's long-held position has been that the listed impairments, even as supplemented with the "medical equivalence" test, is not a comprehensive listing of all disabilities or combination of disabilities that could lead to an inability to engage in "any gainful activity."

tions of the claimant's medical condition to determine whether she meets the core statutory test of being unable to participate in "any gainful activity."

In conclusion, while the statute requires that disabled widow's benefits be awarded to those claimants unable to engage in "any gainful activity," the regulations established by the Secretary to govern disabled widows' claims do not give the Secretary enough information to determine whether or not the claimant is actually able to engage in "any gainful activity." Accordingly, we hold that the Secretary's regulations setting forth the factors to be considered in analysis of the impairments of a claimant for disabled widow's benefits are "manifestly contrary to the statute," *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782, and exceed the Secretary's statutory authority. Pursuant to the task defined by the Act, the Secretary's regulations governing evaluation of social security widow's disability benefits claims must provide for consideration of the claimant's residual functional capacity, supported by medical findings and observations, if her impairment is not coincident with or equivalent to an impairment described in the listings.

We note that, although the circuits are not in harmony, in our holding today we join the First, Second, and Ninth Circuits, which have held that the mechanical application of the listings or their medical equivalents should be supplemented by considerations of the claimant's residual functional capacity. *Ruff v. Sullivan*, 907 F.2d 915 (9th Cir.1990), *as reprinted in* 90 *Daily Journal (Daily Appellate Report)* 7723, 7723 (July 10, 1990) ("[T]he Secretary is required to consider residual functional capacity in determining whether a wage earner's surviving spouse's disability is medically equivalent to a listed impairment."); *Cassas v. Secretary of Health & Human Servs.*, 893 F.2d 454, 458 (1st Cir.1990), adopting the holding of *Kier*, 888 F.2d at 247 (Secretary must consider widow's residual functional capacity to determine whether she was capable of performing any gainful activity); *cf. Tolany*, 756 F.2d at 271–72 (requesting that the Secretary clarify the role of residual functional capacity in the

determination of whether a claimant has a medical equivalence to a listed impairment); *Willeford v. Secretary of Health & Human Servs.*, 824 F.2d 771, 774 (9th Cir. 1987) ("[I]t is distinctly possible that there will be cases where the absence of that ability [to engage in any gainful activity] is demonstrated in such a compelling fashion that the listing becomes a mechanical and unrealistic bar to a just determination.").

By contrast, the Eighth Circuit defined the existing medical equivalence test broadly enough to include residual functional capacity. *Paris v. Schweiker*, 674 F.2d 707, 710 (8th Cir.1982); *see also Reynolds v. Secretary of Health & Human Servs.*, 707 F.2d 927, 929 (6th Cir.1983) (regulations applying listings are valid because the equivalency provisions provide claimants with "ample opportunity to prove that the particular disability, while not identical to one or more of the listed infirmities, is nevertheless of sufficient severity to render them disabled within the contemplation of the Act.").

■ We do not preclude the possibility that the Secretary could announce an interpretation of the medical equivalency test which would include full consideration of residual functional capacity. It would also be consistent with our holding today for the Secretary to consider residual functional capacity as a separate analysis performed if the claimant did not meet or equal the step three listings. However, we conclude that medical equivalency under the interpretation applied to Mrs. Davidson's claim was inadequate to ensure that step three will identify every claimant for widow's benefits who is so medically disabled that she cannot engage in "any gainful activity." *See Zebley*, 110 S.Ct. at 891–93.

In the case before us, Mrs. Davidson had multiple infirmities, none of which taken by itself rose to the level of disability represented by a description in the listings, and no combination of which produced a single effect equal to a level of disability repre-

sented in the listings.[5] However, Mrs. Davidson's direct testimony before the ALJ described a series of physical restrictions which, taken in combination, might arguably have prevented her from engaging in any gainful activity. In addition, Mrs. Davidson's treating physician opined that Mrs. Davidson's vascular history and condition, taken with her diabetes, were explanation for the restrictions in activity which she described, and concluded that she was "unable to work." R.Vol. II at 250. The ALJ did not indicate that he considered either Mrs. Davidson's testimony or her treating physician's opinion in rejecting her widow's benefits claim. *Id.* at 18–19.

Under our holding today, the Secretary must consider any medical evidence which is relevant to the residual functional capacity of the claimant for widow's disability benefits, including the direct testimony of the claimant and the documented opinion of the claimant's treating physician to the extent it is grounded in medical evidence. *See* 20 C.F.R. § 404.1527 (Secretary must consider the opinion of the claimant's treating physician that the claimant is disabled "if supported by medical findings and other evidence"); *cf. Sorenson v. Bowen,* 888 F.2d 706, 711 (10th Cir.1989) (Secretary must give substantial weight to the evidence and opinion of treating physician, absent good cause for rejecting it) (quoting *Eggleston v. Bowen,* 851 F.2d 1244, 1246 (10th Cir.1988)); *accord Reyes v. Bowen,* 845 F.2d 242, 244–45 (10th Cir.1988); *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir.1987).

The order of the United States District Court for the District of New Mexico, filed January 25, 1988, is AFFIRMED.

---

**5.** The ALJ described Mrs. Davidson's impairments as "residuals of vascular lower extremity bypass grafts due to severe atherosclerotic peripheral vascular disease, osteoporosis, and controlled diabetes mellitus." R.Vol. II at 18.