PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 11/12/96**

TENTH CIRCUIT

R. CHRIS PUCKETT,

       Plaintiff-Appellant,

v.

SHIRLEY S. CHATER,
Commissioner, Social Security
Administration,[*]

       Defendant-Appellee.

No. 95-2238

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-94-1314-JC)

Submitted on the briefs:

James A. Burke, Santa Fe, New Mexico, for Plaintiff-Appellant.

John J. Kelly, United States Attorney, Joseph B. Liken, Acting Chief Counsel, Region VI, Linda H. Green, Assistant Regional Counsel, Office of the General

---

[*]      Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R. App. P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

Counsel, U.S. Social Security Administration, Dallas, Texas, for Defendant-Appellee.

---

Before PORFILIO, LOGAN, and LUCERO, Circuit Judges.

---

LOGAN, Circuit Judge.

---

Plaintiff R. Chris Puckett appeals the district court's judgment affirming the Secretary's decision denying plaintiff's application for social security disability benefits. The principal issue on appeal is whether plaintiff's difficulty in repairing or replacing a prosthesis for his leg qualifies as a stump complication or its equivalent under 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.10C.3.

We review to determine whether the Secretary applied the correct legal standards and whether substantial evidence in the administrative record viewed as a whole supports the factual findings. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). We affirm.[1]

Plaintiff's left leg was amputated above the knee in 1969, after he was injured in a motorcycle accident. He received a prosthesis about a year and a half

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

later, following three surgeries to shape his bone and stump. During the following twenty years, he successfully used the prosthesis and worked as a counselor, assistant director and community outreach worker at a drug rehabilitation center, a purchasing agent, and a graphic artist. Most recently, in 1989, he worked for Color Tile in sales and loading and unloading trucks. In August 1989 while unloading a ninety pound box of marble, plaintiff's prosthesis broke. Plaintiff stopped working for Color Tile in December 1989 because his prosthesis had deteriorated badly and was damaging his stump. From December 1989 until April 1992, he had a prosthesis but had considerable difficulties getting it to fit properly. The records of his physician, John Allen, M.D., noted continuing problems with the fit during this period. In April 1992, after switching prosthetic technicians, plaintiff obtained a new prosthesis with a satisfactory fit.

Plaintiff's application for disability benefits alleged disability beginning in December 1989, due to the amputation of his left leg, back pain with degenerated discs, and arthritis. The administrative law judge (ALJ) determined that although plaintiff "has severe limitations secondary to status post amputation of the left leg," he did not have an impairment or combination of impairments meeting or medically equal to the listings and his subjective complaints lacked credibility. Appellant's Supp. App. of Admin. Rec. (Supp. App.) 22. The ALJ further determined that plaintiff could perform his past relevant work as a counselor,

-3-

assistant director/community outreach worker, and graphic artist.  Accordingly, the ALJ concluded at step four of the controlling sequential analysis, see gener- ally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five- step analysis set out in 20 C.F.R. § 404.1520), that plaintiff was not disabled. The Appeals Council denied review.  The district court upheld the Secretary's decision, and plaintiff appealed.

I

Plaintiff first argues that he is entitled to a finding of disability at step three of the sequential analysis because he met Listing § 1.10C.3.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.10C.3.  Listing § 1.10C.3 describes an impairment which by itself is of such severity that it prevents a claimant from performing any gainful activity.  See Kemp v. Bowen, 816 F.2d 1469, 1473 (10th Cir. 1987) (citing 20 C.F.R. § 404.1525(a)).  In relevant part, it provides for a determination of disability for claimants with an amputation of a lower extremity who have an "[i]nability to use a prosthesis effectively, without obligatory assistive devices, due to one of the following:  . . . 3.  Stump too short or stump complications persistent, or are expected to persist, for at least 12 months from onset."  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.10C.3.

Plaintiff contends that the evidence shows he was unable for two years to obtain a satisfactory prosthetic fit, resulting in pain and irritation to his stump,

groin, and back. The Secretary does not dispute the allegation of an ill-fitting prosthesis. Rather, she argues that plaintiff's problems are not stump problems, as is required by the listing, but instead are problems with the prosthetic socket. Plaintiff counters that no distinction should be made between stump and socket problems under the listing, because the stump redness and irritation rendered the prosthesis ineffective.

The issue before us concerns the proper interpretation of Listing § 1.10C.3. Only two circuits have discussed that listing. In Gagnon v. Secretary of Health & Human Services, 666 F.2d 662, 664 (1st Cir. 1981), the evidence showed the claimant had worn a prosthesis daily for many years. Although he asserted his amputated leg was infected and he found it difficult to use his prosthesis, he could stand for at least two hours per day and walk one-half mile. The court held that the claimant could use his prosthesis satisfactorily even though a new type of prosthesis might be better, and that he did not meet Listing § 1.10C.3. Gagnon did not directly address whether prosthesis fit problems are within the scope of the listing.

In Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995), the court held "that a person whose leg was amputated at or above the tarsal region satisfies Listing § 1.10 if he is unable to use any prosthesis that is reasonably available to him." That claimant's stump had begun to "break down." Id. at 320. The condition

worsened resulting in increased pain and "multiple boil-type pressure sores on weight bearing areas and a large purple crusty area with sharp lines of demarcation on the anterior distal portion of his shin." Id. (quotation omitted). The claimant's ill-fitting prosthesis could no longer be satisfactorily adjusted. Because the claimant could not afford a new prosthesis, his treating doctor limited him to walking with a crutch. The Secretary determined that the claimant's condition did not meet or equal the Listing § 1.10 requirement of inability to use a prosthesis effectively.

On appeal, neither party disputed that the claimant's prosthesis caused stump complications or that he could not afford a suitable replacement. The Ninth Circuit thought the Secretary's interpretation of Listing § 1.10C.3 was that "unless the claimant can demonstrate that there exists no prosthesis that would properly fit his stump and enable him to walk without an assistive device, he cannot satisfy the listing." Id. It rejected this view, stating that "the question is whether the claimant, himself, can realistically obtain such a prosthesis." Id. at 322. Because the claimant could not afford a new prosthesis, the court determined there was no prosthesis reasonably available to the claimant to use effectively; therefore his condition met the listings. In Gamble, the court apparently assumed that prosthetic fit problems were included within the scope of Listing § 1.10C.3. The decision, however, appeared to turn on claimant's poverty--his

inability to afford any prosthesis--rather than technical problems in repairing or replacing a prosthesis that once was satisfactory.

We believe Listing § 1.10 plainly requires stump complications, not problems with prosthetic fit. Under that listing the inability to effectively use a prosthesis must be due to one of four conditions: vascular disease (C.1), neurological complications (C.2), disorder of contralateral lower extremities (C.4), or the condition at issue before us: "stump too short or stump complications" (C.3). These conditions all relate to problems of the claimant's body itself. Problems with technicians' ability to repair or replace a prosthesis that a claimant used satisfactorily for twenty years does not fall within the scope of the listing. In order to meet the § 1.10C.3 listing requirement, plaintiff must prove that he is unable to use a prosthesis effectively because of stump complications lasting for at least twelve months.

The evidence does not show that plaintiff has stump complications meeting the listing. After plaintiff's leg was amputated he had three additional surgeries to shape his stump for a prosthesis. At no time relevant to the instant disability determination was there any indication that plaintiff needed revisions to his stump. See, e.g., Supp. App. 140 (Dr. Allen's notation that "no revision of the stump has been required"); id. at 64 (Dr. Gerald Greene's testimony that the stump "seems to be satisfactory"). Dr. Allen's indication that plaintiff always

will have stump problems, even with the best management, is not enough to establish an impairment meeting the listing. According to Dr. Allen, any stump problems are primarily due to an improper fit of the prosthesis. See, e.g., id. at 198 (plaintiff "has been unable to use his prothesis effectively due primarily to problems with the prothesis"). See generally Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995) (generally ALJ gives controlling weight to treating doctor's well supported opinion about the nature and severity of claimant's impairments). No medical records reflect a stump problem independent of the prosthesis fit or plaintiff's overuse of the prosthesis. See Supp. App. 146 ("secondary stump problems"); id. at 164 ("excessive stump wear has probably been solved by a small modification in the socket"); id. at 234-35 (stump redness and irritation caused by poor fit and amount of work plaintiff was demanding of prosthesis).

## II

Even if the listing is interpreted to apply only to stump problems, plaintiff argues that his inability to use the prosthesis is equal in severity to Listing § 1.10C.3. "Because the listings could not possibly include every physical impairment severe enough to prevent the claimant from 'any gainful activity,' the Secretary also established regulations for assessing unlisted impairments or combinations of impairments." Davidson v. Secretary of Health & Human Servs., 912 F.2d 1246, 1251-52 (10th Cir. 1990) (citing 20 C.F.R. § 404.1526).

An impairment which is "medically equivalent" to those listed in the Appendix will suffice "if the medical findings are at least equal in severity and duration to the listed findings." If the impairment is not listed, then the listed impairment "most like" the impairment is considered, and if the applicant has more than one impairment, and none meets or equals a listed impairment, then all symptoms, signs and laboratory findings are to be considered in determining medical equivalency. In all events, the determination of medical equivalence is to be based solely on medical findings. 20 C.F.R. § 404.1526.

Kemp, 816 F.2d at 1473; see also Sullivan v. Zebley, 493 U.S. 521, 531-33 (1990). Here, the medical evidence does not show that plaintiff's condition at least equaled Listing § 1.10C.3.[2] The ALJ did not err in his determination that plaintiff does not have an impairment or combination of impairments meeting or medically equal to the requirements of Listing § 1.10C.3.

III

We need not comment extensively on plaintiff's other arguments. Plaintiff contends that the testimony of the medical advisor, Dr. Greene, did not provide substantial evidence to support a determination of no disability, as he admitted to having limited experience with adjustment and repair of prosthetic devices. The ALJ, however, did not base her decision solely upon Dr. Greene's testimony.

---

[2] The ALJ permissibly gave little weight to Dr. Emmett Altmann's conclusory opinion that plaintiff's situation met or equaled Listing § 1.10C.3. See Supp. App. 218; see also 20 C.F.R. § 404.1525(d).

Rather, she considered the complete medical record, made an independent assessment of the evidence, and then made a decision.

Plaintiff argues that the ALJ failed to give due consideration to his combined impairments of prosthesis fit, degenerative arthritis, back pain, depression, and a torn meniscus in his right leg, as described by Dr. Guy Fogel. This argument was not presented to the district court. "Absent compelling reasons, we do not consider arguments that were not presented to the district court." Crow v. Shalala, 40 F.3d 323, 324 (10th Cir. 1994). As in Crow, plaintiff has been represented by counsel throughout all proceedings, and "we see no reason to deviate from the general rule." Id. Nevertheless, we see no merit to the argument, because the ALJ considered Dr. Fogel's medical examination report along with the other medical evidence. Although Dr. Fogel indicated that plaintiff had not yet reached maximum medical improvement, that possibility does not alone establish disability.

Plaintiff finally argues that the ALJ improperly deprived plaintiff of a full and adequate opportunity to develop the record by (1) refusing to copy and provide records to plaintiff's attorney; (2) preventing plaintiff's attorney from looking at Dr. Greene's notes before cross examining him; and (3) acting in an injudicious manner. Because the ALJ had an open file policy, plaintiff had an opportunity to view and copy the evidence in the file before the hearing. See

-10-

20 C.F.R. § 404.916(b)(3). Nothing requires that the Secretary copy records for a claimant. If the proceeding had been in district court, plaintiff's counsel would have been entitled under Fed. R. Evid. 612, for use in cross examination, to examine Dr. Greene's notes on the medical records to which he referred while testifying. Although it would seem good practice to follow in an administrative hearing, the applicable regulations do not require the ALJ to adhere to the Federal Rules of Evidence. See Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995) (citing 20 C.F.R. § 404.950(c)). In any event plaintiff did not raise either the cross examination or bias issue in the district court. Further, plaintiff's conclusory allegation of bias by the ALJ is without support in the administrative record, which shows that plaintiff received a full opportunity to develop the record and present post-hearing evidence. Cf. Isom v. Schweiker, 711 F.2d 88, 90 (8th Cir. 1983) (any bias corrected by ALJ's allowance of complete record).

AFFIRMED.