Anna Burwell SERGENTON, Plaintiff,

v.

**Jo Anne BARNHART, Commissioner of Social Security, Defendant.**

No. 05–cv–4551 (ADS).

United States District Court, E.D. New York.

Jan. 13, 2007.

Sherman, Federman, Sambur & Levine, LLP by Kenneth S. Beskin, Esq., Bay Shore, NY, for Plaintiff.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York by Denise McGinn, Assistant U.S. Attorney, Central Islip, NY, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Anna Sergenton Burwell ("Burwell" or the "Claimant") commenced this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final determination of the Commissioner of Social Security (the "Commissioner") that denied disability benefits to her. The Court notes that the caption of the case, as well as the parties' submissions, incorrectly state that the Claimant's name is Anna Burwell Sergenton.

Currently before the Court is a motion by the Commissioner pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. The Claimant opposes the Commissioner's motion, and requests that the matter be remanded.

## I. BACKGROUND

### A. Procedural History

On October 8, 2003, Burwell filed an application for social security disability benefits alleging a disability and inability to work due to macular degeneration. After her application was denied, she requested a hearing before an administrative law judge. On July 20, 2005, a hearing was held before Administrative Law Judge Iris Rothman (the "ALJ"). After the

hearing, in a decision dated August 4, 2005, the ALJ denied Burwell's claim for disability benefits finding that the Claimant was not disabled. On September 8, 2005, the Appeals Council denied the Claimant's request for review. On September 26, 2005, the Claimant commenced this action.

## B. *The Record*

### 1. The Plaintiff's Background and Testimony

Burwell was born on February 3, 1943, making her 62 years of age at the time of the ALJ's decision. She has a college degree and a master's degree in business administration, as well as a professional diploma in school administration. She worked as a high school teacher and administrator from 1972 until January 2002.

Burwell testified that she stopped working in January 2002 because her macular degeneration was gradually causing her increased vision loss. She testified that she is only able to read black print on a white background, and cannot read handwriting or print on colored paper. She stated that, throughout the last year of her employment, she had a student monitor to help her read and grade students' work. She testified that although she has close to normal corrected vision in her right eye, her corrected vision in her left eye is 20/200. As a result, reading is extremely difficult and, in some cases, impossible. Also, she testified that when she tries to read, her eyes water and she must stop to rest every 10–15 minutes. The Claimant further testified that her doctors have informed her that there is no treatment for macular degeneration. She is also unable to handle very small objects, cannot thread a needle and must specially arrange paper money in her wallet because she cannot read and differentiate the dollar amounts. She is only able to drive during the day.

### 2. The Treating Physicians

#### a. Dr. Mark A. Melamed

Dr. Melamed is the Claimant's treating ophthalmologist who has treated the Claimant since 1998. On November 4, 2003, Dr. Melamed wrote a report regarding his June 17, 2003 examination of Burwell. According to Dr. Melamed, his fundus examination revealed extensive evidence of macular degeneration in both of the Claimant's eyes. He noted that she has advanced macular atrophy in both eyes and has lost useful vision in her left eye. He further found that she is in danger of losing useful vision in her right eye. He noted that her corrected vision is 20/25 in her right eye and 20/200 in her left eye.

On July 19, 2005, the Claimant again saw Dr. Melamed who noted that she has a form of macular degeneration and that her prognosis is guarded.

#### b. Dr. Stephen G. Schwartz

Dr. Schwartz, Medical Director of the Bascom Palmer Eye Institute, examined the Claimant on March 15, 2005 and noted that Burwell has a history of macular degeneration and was first diagnosed with the disease at age 35. He noted that she reported that her vision declined further over the eight years preceding her visit. Upon examination, Dr. Schwartz determined that the Claimant's best corrected vision was 20/30 in her right eye and 20/200 in her left eye. He noted that there was macular atrophy in both eyes, but more prominent in the left eye. Dr. Schwartz performed color fundus photography and optical coherence tomography. He determined that the diagnosis was more consistent with Stargardt's disease than with macular degeneration.

### 3. Social Security Administration Physicians

#### a. Dr. Robert Auerbach

On November 13, 2003, at the request of the Social Security Administration, Burwell was examined by Dr. Auerbach. He reported that the Claimant stated that she has macular degeneration. After examination, Dr. Auerbach noted that, without correction, the Claimant's visual acuity was 20/200 in both eyes. He further noted that with glasses, her vision was 20/30 in her right eye and 20/200 in her left eye. Dr. Auerbach determined that the Claimant has macular degeneration and cataracts. He noted that her prognosis was guarded and that macular degeneration tends to be a progressive disease. He also noted that due to her decreased vision in her left eye, the Claimant would have difficulty performing tasks that require fine visual acuity and binocularity.

#### b. Dr. Evelyn Wolf

On December 2, 2003, Burwell was examined by Dr. Wolf, pursuant to a referral by the Division of Disability Determination. Dr. Wolf stated that the Claimant has a history of macular degeneration since 1988 and is legally blind in her left eye. Dr. Wolf noted that the Claimant was not limited in walking, standing or sitting. Dr. Wolf determined that any activity involving visual acuity would be impaired.

### 4. Physical Residual Functional Capacity Assessment

On January 6, 2004, a Social Security Administration review physician completed a physical residual functional capacity assessment of Burwell based on a review of her medical records. The physician concluded that the Claimant had no exertional, postural, manipulative, communicative, or environmental limitations. The physician noted that the Claimant had visual limitations and was limited in near acuity and far acuity, but had no limitations regarding her field of vision, depth perception or color vision.

### 5. Testimony of the Vocational Expert

At the July 20, 2005 hearing, Dr. Vandergoot, a rehabilitation counselor, testified as a vocational expert regarding the Claimant's ability to work. He testified that she primarily worked as a teacher and her teaching career spanned 30 years. He found that she held a skilled position which is considered to be a light job in terms of exertion. She also has the credentials to perform administrative work within schools. Dr. Vandergoot noted that with the Claimant's limitations she is unable to perform her past relevant work. He determined that all other jobs that her skills would transfer to are related to teaching and would require reading. He found that she would be unable to perform those jobs.

During Dr. Vandergoot's testimony, the ALJ stated that although the Claimant was approaching advanced age, she had no exertional limitations. The ALJ stated that the regulations did not require transferability of skills when there is no exertional limitation. Dr. Vandergoot responded that he had found that the Claimant's job skills had to transfer with little adjustment as a result of her age. The ALJ requested that Dr. Vandergoot consider whether any work, skilled or unskilled, could be performed with the Claimant's limitations, regardless of skill transferability. Dr. Vandergoot testified that the Claimant was able to perform jobs in the packaging industry, such as a packager. Dr. Vandergoot also determined that the Claimant could work in a laundry, as either a table worker or a seam steamer.

## C. *The ALJ's Findings*

In the August 4, 2005, decision, the ALJ denied Burwell's disability claim. Based on the evidence presented, the ALJ opined that the Claimant was not disabled within the meaning of the Social Security Act. The ALJ determined that the Claimant has an impairment, bilateral macular degeneration, that is severe. The ALJ found that the Claimant lost useful vision in her left eye and was in danger of further visual loss in her right eye. However, the ALJ found that the Claimant's impairment was not severe enough to meet or equal the impairments listed in the regulations.

Following a review of the medical records, the ALJ found that the Claimant was diagnosed with macular degeneration at age 35. The ALJ afforded some weight to the treating physicians Dr. Melamed and Dr. Schwartz. The ALJ stated that Dr. Melamed reported that the Claimant had lost all useful vision in her left eye and has fairly advanced macular atrophy in both eyes. The ALJ further noted Dr. Melamed's finding that the Claimant has a guarded prognosis. The ALJ also relied on the findings of Dr. Schwartz, noting that Dr. Schwartz had found that the claimant had macular atrophy and 20/200 vision in her left eye.

The ALJ also relied upon the opinions of the doctors who examined the Claimant at the request of the Social Security Administration. The ALJ noted that Dr. Auerbach determined that the Claimant had severely decreased vision in her left eye, good visual acuity in her right eye and would have difficulty performing tasks requiring fine visual acuity. The ALJ also relied upon Dr. Wolf's examination of the Claimant, and his opinion that the Claimant had bilateral macular degeneration and that any action involving visual acuity would be limited.

The ALJ further reviewed the Claimant's testimony finding that she testified that she had no limitations in her activities of daily living, with the exception of handling very small objects and paper money. The ALJ noted that Burwell is able to drive during the day, but stopped working as a teacher because of her inability to read handwriting.

The ALJ determined that the Claimant has no exertional limitations and the sole non-exertional limitation relates to her visual impairment. The ALJ relied on and agreed with the vocational expert's testimony that the Claimant's visual limitations preclude her from being able to perform her past relevant work as a teacher or administrator.

The ALJ determined that the Claimant was 62 years old and therefore, pursuant to the regulations, she was an individual closely approaching retirement age. The ALJ stated that the vocational expert had testified that the Claimant has transferrable skills from work previously performed, but that she is unable to use those skills due to the limitations on her ability to read. The ALJ further relied upon the vocational expert's testimony that the Claimant would be able to perform many unskilled jobs, such as a laundry worker or packager. The ALJ determined that as long as sufficient visual acuity exists to handle large objects, substantial numbers of jobs remain at the light and greater exertional level.

The ALJ concluded that, considering Burwell's age, educational background, work experience and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy. The ALJ concluded that the Claimant was not disabled.

## II. *DISCUSSION*

### A. *Standard of Review*

When reviewing the decision of the Commissioner, the court may set aside the determination only if the decision was based on legal error or was not supported by substantial evidence in the administrative record. See 42 U.S.C. § 405(g); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir.2003); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999); *Brown v. Apfel*, 174 F.3d 59, 61–62 (2d Cir.1999). Substantial evidence has been described as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The evidence must be such that a reasonable person accept it as adequate to support a conclusion. *Brown*, 174 F.3d at 62–63.

In addition, the Commissioner must accord special evidentiary weight to the opinion of the treating physician, so long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is consistent "with the other substantial evidence in [the] case record." *See Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998). When the Commissioner chooses not to give the treating physician's opinion controlling weight, he must give "good reasons in his notice of determination or decision for the weight he gives the claimant's treating source's opinion." *Id.*

When determining whether the Commissioner's findings are supported by substantial evidence, the court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983). Further, the court must keep in mind that "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark*, 143 F.3d at 118. Therefore, when evaluating the evidence, "the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

In addition, the district court may remand a disability claim for the taking of additional evidence upon a showing that there is new material evidence and that such evidence should be presented to the ALJ in order to render a valid decision. *Id.* Also, the court may remand if "there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . ." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir.1999).

A reviewing court may "enter upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decisions of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When deciding whether to remand, an important factor that the court should consider is whether further findings would plainly help to assure the proper disposition of the claim. *Rosa*, 168 F.3d at 83. "In deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir.2004).

### B. *Analytical Framework*

To qualify for disability benefits under 42 U.S.C. § 423(d)(1)(A) a plaintiff must

establish her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months." *Butts,* 388 F.3d at 383. The Act also states that the impairment must be of "such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

Federal regulations lay forth a five step analysis that the ALJ must follow when evaluating disability claims:

1) The ALJ will consider whether the claimant is engaged in substantial gainful activity.

2) The ALJ will consider whether the claimant has a severe medically determinable physical or medical impairment which will impair the claimant from doing basic work activities

3) The ALJ will consider whether the claimant's severe medical impairment, based solely on medical evidence, is a limitation that is listed in Appendix 1 of the regulations.

4) The ALJ will consider an assessment of the claimant's residual functional capacity and ability to continue past relevant work despite severe impairment.

5) The ALJ will consider an assessment of the claimant's residual functional capacity along with age, education, and work experience. Here the burden shifts to the ALJ to show that the claimant can perform alternative work.

20 C.F.R. §§ 404.1520, 416.920.

When proceeding through this five step analysis, the Commissioner must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age and work experience. *Mongeur,* 722 F.2d at 1037.

## C. *Analysis*

Based upon the medical and non-medical evidence, the ALJ determined that the Claimant was limited by her vision and could not return to her past relevant work. Based on the testimony from the Claimant and a vocational expert, the ALJ concluded that despite the impairment of macular degeneration, the Claimant could perform unskilled work involving the handling of large objects. However, the Claimant argues that the evidence was not fully developed during her hearing because she was not represented by counsel. She further argues that the ALJ failed to properly consult the Medical Vocation Guidelines or "grids" in determining whether there were available jobs that the Claimant could perform and failed to consider that the Claimant is a person closely approaching retirement age. Finally, the Claimant alleges that an updated report from her treating ophthalmologist, Dr. Melamed, dated March 7, 2006, discussing her December 20, 2005, visit should be considered by the Commissioner. In this report, Dr. Melamed notes that the Claimant's visual acuity is 20/200 in both eyes and that she is legally blind and unable to work.

### 1. Development of the Evidence

■ The Claimant argues that because she was not represented by counsel during the hearing, the evidence was not sufficiently developed. In this Court's view, this claim lacks merit. At the hearing, the ALJ properly informed the Claimant of her right to representation, explaining that an attorney could assist her and confirming that the Claimant had received a list of organizations that provide free legal ser-

vices. The Claimant informed the ALJ that she wished to proceed without counsel.

Moreover, despite the Claimant's vague allegations regarding lack of development of the evidence, the ALJ considered the medical reports of the Claimant's treating physicians, as well as the Claimant's own testimony. Accordingly, the Court rejects the Claimant's development of the evidence contention.

### 2. The Use of the Grids in Non–Exertional Disability Cases

When evaluating the Claimant's residual functional capacity in the fifth step, the ALJ is charged with the task of marshaling the evidence and determining whether there are a significant number of jobs in the national economy that the Claimant can perform based on her residual functional capacity, age, education, and prior vocational experience. *See* 20 C.F.R. § 404.1560; *Butts*, 388 F.3d at 381 (2d Cir.2004); *see also Sims v. Apfel*, 530 U.S. 103, 110, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). "In the ordinary case, the Commissioner meets [the] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids)." *Rosa*, 168 F.3d at 78 (quotations and citations omitted).

However, the grids only account for exertional limitations, that is, those that relate to "strength" requirements of jobs such as the claimant's capacity to sit, stand, walk, lift, carry, push or pull. "The Regulations specifically direct that, where the individual has solely a nonexertional type of impairment, determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, and instruct that the [grid] rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of

impairments." *Cosgrove v. Barnhart*, No. 01 Civ. 2632, 2004 WL 1171772, at *5, 2004 U.S. Dist. LEXIS 7918, at *13–14 (S.D.N.Y. May 10, 2004).

Impairments and limitations that do not implicate the strength required to perform a particular task are considered non-exertional. For example, mental, sensory, and skin impairments are considered non-exertional, as well as impairments that cause environmental restrictions. *See* Social Security Ruling 96–8p. "Vision impairments are considered nonexertional limitations." *Cosgrove*, 2004 WL 1171772 at *5, 2004 U.S. Dist. LEXIS at *13–14. When evaluating significant non-exertional impairments that limit the range of sedentary work that the claimant can perform, sole reliance on the grids is inappropriate. Instead, a vocational expert is necessary to assess the claimant's residual functional capacity for meaningful employment opportunities. *See Bapp v. Bowen*, 802 F.2d 601, 605–06 (2d Cir.1986).

While it is true that the grids may be used as a guideline if the exertional limitations listed in the grids are similar to the claimant's non-exertional limitations, the use of the grids is not required. Indeed, relying on the grids "in lieu of testimony from a vocational expert ..." has been described as "inappropriate" by the Second Circuit. *Rosa*, 168 F.3d at 82. Unlike determining a disability where the claimant has an exertional impairment, "[t]he rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." 20 C.F.R. Pt. 404 App. 2, Grid Rule 200.00(e)(1). "Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be

considered adverse." *Cosgrove*, 2004 WL 1171772 at *6, 2004 U.S. Dist. LEXIS at *16–17 (citing 20 C.F.R. § 404.1569).

According to the Social Security Administration

As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels. However, a finding of disability could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential.

1985 SSR LEXIS 20, 20–21 (SSR 1985).

■ Here, the Court finds that the ALJ properly relied on the vocational expert, Dr. Vandergoot, rather than the grids. Although a similar claimant with an exertional or physical limitation could be considered "disabled" under the grids, this alone does not dictate a finding of disability in this nonexertional case. Cases involving nonexertional limitations are inherently different than those involving solely physical limitations because of the impact the disability has on the individual's work capability.

### 3. As To Approaching Retirement Age

■ The Claimant further claims that the ALJ did not consider that she was approaching retirement age. Although during the hearing, the ALJ informed Dr. Vandergoot that the regulations did not require a consideration of the claimant's age and transferability of skills because the claimant had a nonexertional limitation, throughout her opinion, the ALJ repeatedly considered the Claimant's age, work experience, educational background and residual functional capacity. Moreover, pursuant to Social Security Ruling 85–15, regarding visual impairments, a disability ruling "could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential." After a consideration of these factors, including approaching retirement age, the ALJ determined that the Claimant retains the capacity to adjust to various other types of work in the national economy.

In sum, as the ALJ's decision relied on proper considerations and was not based on legal error or unsupported by substantial evidence in the administrative record, this Court may not set aside the decision on these grounds. *See* 42 U.S.C. § 405(g); *Jasinski*, 341 F.3d at 184.

### 4. The New Evidence Regarding The Progression of the Claimant's Macular Degeneration

■ The sixth sentence of 42 U.S.C. § 405(g), states that "[t]he court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding...." 42 U.S.C. § 405(g); *see also Shalala v. Schaefer*, 509 U.S. 292, 297, n. 1, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993); *Melkonyan v. Sullivan*, 501 U.S. 89, 99–

100, n. 2, 111 S.Ct. 2157, 2163–64, n. 2, 115 L.Ed.2d 78 (1991).

The Second Circuit has stated that the inclusion of additional evidence requires a "three-part showing" as follows:

An appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

*Lisa v. Sec'y of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir.1991) (quotations and citations omitted). " 'Good cause' for failing to present evidence in a prior proceeding exists where, as here, the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Id.* at 44 (citing *Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir.1985)).

Although the Claimant argues that her March 7, 2006 report from Dr. Melamed, describing the progression of her condition, pursuant to her December 2005 examination, should be considered by the Commissioner, the Commissioner argues that the report is not material because it does not relate to the time period for which benefits were denied to the Claimant. However, the Second Circuit has "determined that when, as in this case, a diagnosis emerges after the close of administrative proceedings that 'sheds considerable new light on the seriousness of [a claimant's] condition,' evidence of that diagnosis is material and justifies remand." *Id.* (citing *Tolany*, 756 F.2d at 272) (re-

manding for Secretary to consider medical report supplying new diagnosis); *Wagner v. Secretary of Health & Human Servs.*, 906 F.2d 856 (2d Cir.1990) (reversing Secretary for failing to give appropriate weight to retrospective diagnosis for consideration of which this court had previously remanded); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988) (recognizing possibility that retrospective diagnosis may reveal depth of illness existing but not fully appreciated at time of prior hearing, and remanding to district court to determine in first instance whether evidence should be presented to Secretary). *See also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir.2004) ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the Claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought").

Although the evidence presented to the ALJ consisted of various diagnoses of macular degeneration with a guarded outcome, the ALJ's decision relied upon the Claimant's corrected vision of 20/30 in her right eye. The diagnoses relied upon did not inform the ALJ of severity of the disease, or, specifically, the speed with which the Claimant's condition could progress. In the present case, Dr. Melamed states that the Claimant's visual acuity is 20/200 in both eyes and that she is legally blind and unable to work, a much more serious prognosis. The introduction of the Claimant's "new diagnostic evidence would present a reasonable possibility of influencing the Secretary to decide her application differently. This evidence would suggest that [the Claimant] had an impairment substantially more severe than was

previously diagnosed." *Lisa,* 940 F.2d at 44.

The Court finds the new evidence relevant and probative of the Claimant's condition. Therefore, the Court remands this case so that the Commissioner may consider the post-hearing medical evidence. After hearing such evidence, "the Secretary must return to the district court to 'file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.'" *Melkonyan,* 501 U.S. at 98, 111 S.Ct. at 2163, 115 L.Ed.2d 78 (citing 42 U.S.C. § 405(g)).

### III. *CONCLUSION*

Having reviewed the submissions of the parties and the findings by the Commissioner, the ALJ, and the Appeals Council, and for the reasons set forth above, it is hereby

**ORDERED,** that the motion by the Commissioner for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is **DENIED;** and it is further

**ORDERED,** that the case is remanded to the Commissioner for further administrative proceedings in accordance with this Order; and it is further

**ORDERED,** that the Clerk of the Court is directed to mark this case closed; and it is further

**ORDERED,** that the parties may apply to reopen the case upon the filing of additional or modified findings of fact and a decision vacating, modifying, or affirming the Commissioner's prior decision in this case.

**SO ORDERED.**