**Anna Burwell SERGENTON, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

No. 05–CV–4551(ADS).

United States District Court, E.D. New York.

May 28, 2010.

**414**

Jeffrey Delott, Esq., Jericho, N.Y., Loretta E. Lynch, United States Attorney, Eastern District of New York, by Thomas A. McFarland, Assistant United States Attorney, Central Islip, NY, Attorney for the Plaintiff.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Anna Sergenton Burwell ("the Claimant") seeks an award of attorneys' fees against the Commissioner of Social Security ("the Commissioner") pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). For the reasons discussed below, the Claimant's motion is granted.

## I. BACKGROUND

The Court notes that the caption of this case, as well as the parties' submissions, incorrectly state that the Claimant's name is Anna Burwell Sergenton.

The Claimant, a high school teacher and administrator, has suffered from macular degeneration since 1978. She stopped working in 2002 after her condition gradually caused her significant vision loss. On October 8, 2003, the Claimant filed an application for disability insurance benefits. After the application was denied, the Claimant requested a hearing before an Administrative Law Judge ("ALJ").

The Claimant represented herself in a hearing that was held on July 20, 2005, before ALJ Iris Rothman. On August 14, 2005, ALJ Rothman determined that the Claimant was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 405(g). ALJ Rothman's decision became the final decision of the Commissioner when the Appeals Council denied the Claimant's request for a review on September 8, 2005. On September 26, 2005, the Claimant—acting pro se—filed the instant action, challenging the Commissioner's decision.

The Commissioner filed a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings on February 10, 2006. On April 11, 2006, counsel appeared for the Claimant and filed papers in opposition to the Commissioner's motion. Attached to the Claimant's opposition papers was a copy of a report, dated March 7, 2006, from Dr. Mark A. Melamed, the Claimant's treating ophthalmologist. In the report, Dr. Melamed reported on the Claimant's most recent visit on December 20, 2005. In his

report, Dr. Melamed stated that the Claimant's macular degeneration was such that she was legally blind and unable to work.

On January 13, 2007, the Court issued an order remanding the case for further administrative proceedings pursuant to sentence six of 42 U.S.C. § 405(g). *See Sergenton v. Barnhart,* 470 F.Supp.2d 194 (E.D.N.Y.2007). In the federal proceeding, the Claimant argued that ALJ Rothman failed to: (1) fully develop the record because the Claimant was not represented by counsel in the hearing; (2) properly consult the Medical Vocation Guidelines in determining whether there were available jobs that she could perform; and (3) consider that she was approaching retirement age. *Id.* at 201. The Court rejected each of these arguments in turn. *Id.* at 201–03.

However, the Court remanded the case so that new evidence not at ALJ Rothman's disposal, namely Dr. Melamed's March 7, 2006 report, could be considered. *Id.* at 203–05. In the Court's view, a remand was necessary because the new diagnosis suggested that her condition was far more severe than the earlier diagnoses relied upon by ALJ Rothman. *Id.* at 204–05.

On July 3, 2007, the Claimant had a second hearing before ALJ Rothman. In preparation for the second hearing, the Claimant's counsel sent ALJ Rothman a letter attaching a note from Dr. Melamed, dated June 13, 2007. Dr. Melamed's letter emphasized the impact that the Claimant's macular degeneration had on her visual fields and noted that he believed she was incapable of working.

Apparently, ALJ Rothman lost Dr. Melamed's March 7, 2006 report. The Claimant's counsel then sought a copy of the letter from Dr. Melamed but was told that many of his records had been destroyed in a fire. The Claimant's prior counsel also did not have a copy of the letter. In addition, ALJ Rothman apparently declined to contact Dr. Melamed. Undaunted, the Claimant's counsel sought and received an updated report from Dr. Melamed. However, ALJ Rothman refused to consider the updated report. Ultimately, on August 2, 2007, ALJ Rothman again determined that the Claimant was not disabled.

On December 30, 2008, the Appeals Council issued a decision remanding the case for a new hearing. *See* Claimant's Ex. E. The Appeals Council found that "the apparent loss of [Dr. Melamed's letter] means that the record is incomplete and that the observations made regarding this material cannot be reviewed or evaluated." *Id.* at 2. In light of this fact and "the aged nature of the clinical and diagnostic visual evidence in [the] file," the Appeals Council concluded "that additional evidence will be required including a current consultative ophthalmological examination and medical source statements about what claimant can still do." *Id.* at 3. The Appeals Council also directed that the case be remanded to a different ALJ.

The Claimant's third hearing was held before ALJ Seymour Rayner on August 6, 2009. In a decision issued on August 27, 2009, AL Rayner determined that the Claimant had been disabled due to macular degeneration since February 1, 2005. *See* Claimant's Ex. F. In reaching this decision, ALJ Rayner considered opinions from Dr. Osvaldo J. Fulco, an impartial medical expert; Raymond E. Cester, a vocational expert; and Dr. Melamed.

According to ALJ Rayner's decision, Dr. Fulco testified that the Claimant had severe vision impairment due to macular degeneration. *See* Claimant's Ex. F at 4. The decision noted Cester's view that "due to macular degeneration the claimant could

not perform her past relevant work as a teacher ... and could not perform any other work in the local and national economies." Id. ALJ Rayner also emphasized the opinion offered by Dr. Melamed. In particular, ALJ Rayner noted that Dr. Melamed testified that the Claimant "would be a hazard in the workplace" due to her "inability to adequately read posted signs relating to emergencies." Id. ALJ Rayner also noted Dr. Melamed's view that "the claimant's visual acuity was not as important in evaluating a patient ... with macular degeneration as is visual efficiency." Id.

In light of ALJ Rayner's favorable decision, the Court issued a final judgment in this case on October 5, 2009. The Claimant has since timely moved for attorneys' fees pursuant to the EAJA.

## II. DISCUSSION

### A. Standard—The Equal Access to Justice Act

■ "The EAJA was enacted to decrease the chance that 'certain individuals ... may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights.' " *Green v. Bowen*, 877 F.2d 204, 206 (2d Cir.1989) (quoting *Smith by Smith v. Bowen*, 867 F.2d 731, 734 (2d Cir.1989)). To that end, the EAJA provides that courts may award attorneys' fees incurred by a prevailing party in certain civil actions against the United States "unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

■ In order to be eligible for an award of attorneys' fees, the EAJA requires a claimant to show that: (1) she is a "prevailing party"; (2) the Government's posi-

tion was not "substantially justified"; (3) no "special circumstances make an award unjust"; and, (4) the fee application was submitted to the court within 30 days of final judgment in the action. *Kerin v. U.S. Postal Service*, 218 F.3d 185, 189 (2d Cir. 2000) (quoting 28 U.S.C. § 2412(d)). Here, the Commissioner does not dispute that the Claimant was a "prevailing party" or that her fee application was timely. Nor does the Commissioner contend that special circumstances make an award unjust in this case. The sole issue for the Court to decide is whether the Government's position was "substantially justified" at the various stages of the Claimant's quest for benefits.

### B. Was the Government's Position Substantially Justified?

■ "The Commissioner bears the burden of showing that his position was 'substantially justified,' which the Supreme Court has construed to mean 'justified to a degree that could satisfy a reasonable person.' " *Ericksson v. Comm'r of Social Security*, 557 F.3d 79, 81 (2d Cir.2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). Under this standard, the Government's position is substantially justified if it had "a reasonable basis both in law and in fact." *Pierce*, 487 U.S. at 563, 108 S.Ct. 2541. "When assessing the 'position of the United States,' courts must review 'the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based.' " *Ericksson*, 557 F.3d at 82 (quoting 28 U.S.C. § 2412(d)(2)(D)).

■■ This means that "a court should inquire into both the underlying agency determination affecting the party, as well as the Government's litigation strategy in defense of that determination." *Bowen*, 867 F.2d at 734. If the Court determines

"that the Government's position in any segment of the litigation was not substantially justified," it should "award[ ] fees for the time spent by [counsel] in successfully opposing the Government's position in that segment." *Id.* at 735 (citing *Porter v. Heckler*, 780 F.2d 920, 922 (11th Cir.1986)).

■ Here, the Claimant seeks to recover all of the attorneys' fees incurred in connection with her case after the Court remanded the matter to ALJ Rothman. The first question for the Court is whether the time spent in connection with the second hearing is compensable. The answer to this question turns on whether ALJ Rothman's first decision and the Government's defense of that decision, were reasonable.

In the January 13, 2007 order, the Court addressed each of the Claimant's arguments and found no legal error in ALJ Rothman's original decision. *Sergenton*, 470 F.Supp.2d at 201–03. Under the circumstances, the Court fails to perceive— and the Claimant makes no convincing effort to explain—how she can now successfully argue that ALJ Rothman's first decision was unreasonable. The fact that the matter was remanded is immaterial. The case was remanded for a second hearing pursuant to the sixth sentence of Section 405(g) for the purpose of entertaining new medical evidence that was *unavailable* to ALJ Rothman during the initial hearing; not because there was a problem with the decision. *See Sergenton*, 470 F.Supp.2d at 203 (holding that "[ALJ Rothman's] decision relied on proper considerations and was not based on legal error or unsupported by substantial evidence in the administrative record …"). It follows that the Government's position defending ALJ Rothman's first decision was also not unreasonable. Accordingly, the Court finds that the Claimant is not entitled to attorneys' fees for work performed prior to the second hearing. However, the Court will award the Claimant attorneys' fees incurred after the second hearing because the Court believes that ALJ Rothman's conduct in that hearing was unreasonable.

■ It is well-established that an ALJ has a responsibility to develop the record at the administrative level. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999). Here, as noted above, the matter was remanded to ALJ Rothman for the purpose of allowing the Claimant to introduce posthearing medical evidence from Dr. Melamed. *Sergenton*, 470 F.Supp.2d at 205. However, ALJ Rothman apparently lost the March 7, 2006 report from Dr. Melamed. Although counsel was, for legitimate reasons, unable to obtain a copy of the report, ALJ Rothman declined to contact Dr. Melamed. When counsel produced an updated report from Dr. Melamed, ALJ Rothman declined to consider it. On this record, where ALJ Rothman refused to consider the very medical opinion that served as the basis for the remand, the Court finds that her position was unreasonable. It follows that the Claimant is entitled to attorneys' fees for any work that followed the second hearing on July 3, 2007, because it was at this point that the Government's position was no longer substantially justified. *See Bowen*, 867 F.2d at 735 (citing *Porter v. Heckler*, 780 F.2d at 922) (observing that courts should "award[ ] fees for the time spent by [counsel] in successfully opposing" Governmental positions that are not substantially justified).

The Government contends that because her claim for benefits was eventually granted by ALJ Rayner, the Claimant is precluded from arguing that "the position of the Commissioner after remand was not substantially justified." Def's Opp. at 9. However, the fact that the Commissioner ultimately awarded benefits after a third

hearing does not change the fact that the Claimant was required to litigate the issue after ALJ Rothman took an unreasonable position in the second hearing. Under the EAJA, the time and effort expended opposing ALJ Rothman's second decision is compensable.

The Government also appears to contend that because, in reaching his decision, ALJ Rayner considered new evidence that was not available to ALJ Rothman, the Claimant cannot show that ALJ Rothman's decision was unreasonable. The Court disagrees. Although ALJ Rayner did review new evidence from Dr. Fulco and Cester in the third hearing, his decision also relied heavily upon the medical opinion offered by Dr. Melamed. Dr. Melamed's medical opinion was available to ALJ Rothman at the second hearing but she refused to consider it. Had she considered this critical evidence, it is likely that she would have reached the same decision as ALJ Rayner.

Under the circumstances, the Court finds that the Government has not met its burden to show that ALJ Rothman's decision following the second hearing was substantially justified. Accordingly, the Court finds that the Claimant has established each of the requisite elements under the EAJA and is therefore entitled to an award of attorneys' fees.

## C. The Award of Attorneys' Fees

The Court must now determine the amount of attorneys' fees to which the Claimant is entitled. An award of attorney's fee under the EAJA "shall be based upon prevailing market rates for the kind and quality of the services furnished[.]" 28 U.S.C. § 2412(d)(2)(A). Fees are generally capped at $125 per hour, however, the cap does not apply if "the court determines that an increase in the cost of living ... justifies a higher fee." Id. The "cost of living" adjustment to be applied is that measured by the Consumer Price Index ("CPI"). Kerin, 218 F.3d at 194. The court must apply a different cost of living adjustment for each year in which hours were billed, rather than applying a single adjustment to the total hours billed Id.

Counsel contends that he is entitled to a fee adjustment based on the increase in the cost of living since March 29, 1996 when the statutory cap was set. Given the obvious increase in the cost of living over the last fourteen years and because the Government does not challenge the proposed increases, the Court will make hourly rate adjustments pursuant to the CPI for the New York–Northern New Jersey–Long Island area. The cost of living adjustment for each year in which hours were billed is: $170.38 for 2007; 177.01 for 2008; and 177.80 for 2009. See United States Dept. of Labor, Bureau of Labor Statistics, *http://www.bls.gov/cpi.* (last visited May 27, 2010).

■ In order to arrive at the fee award, the Court must also look to the hours reasonably expended on this matter. Counsel's billing records are straightforward. Based upon the Court's review, it appears that the hours billed were reasonable. Only one entry requires a brief discussion.

The Court has already determined that the Claimant is only entitled to fees incurred after the second hearing on July 3, 2007. As noted above, the reason for drawing this line is that it was only at this point that the Government had taken a position that was not substantially justified. Counsel's records for July 3, 2007 show that he billed 5.5 hours in connection with the second hearing and a post-hearing memorandum. In a letter dated May 27, 2010, counsel clarified that he spent 3 hours of that time drafting the post-hear-

ing memorandum. In the Court's view, counsel should only be compensated for the 3 hours he spent on the post-hearing memorandum. After the remand, counsel would have had to expend 2.5 hours on the hearing itself whether or not ALJ Rothman reached an unreasonable decision therein. *After* the ALJ's unreasonable conduct in the hearing, counsel began the process of challenging her decision by filing a post-hearing memorandum addressing the perceived errors. This time is compensable under the EAJA.

The following chart provides a summary of the hours billed in each year and the appropriate adjusted hourly rate for those years:

| Year | Hours Billed | Hourly Rate | Fee |
|------|--------------|-------------|-----------|
| 2007 | 15.50 | 170.38 | $2,640.89 |
| 2008 | 5.60 | 177.01 | $ 991.25 |
| 2009 | 40.70 | 177.80 | $7,236.46 |
| | | Total: | $10,868.60 |

## III. CONCLUSION

The Claimant's motion for attorneys' fees is granted in the total amount of $10.868.60.

**SO ORDERED.**